Matthew C. Helland, CA SBN 250451
helland@nka.com
Daniel S. Brome, CA SBN 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Plaintiffs and Others
Similarly Situated

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Donnie Cummings, Christopher Jones, and Charles Beaty, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Cenergy International Services, LLC,<br><br>Defendant. | Case No.<br><br>**COLLECTIVE ACTION COMPLAINT FOR DECLARATORY JUDGMENT** |

## PRELIMINARY STATEMENT

1. This is a collective action brought by Plaintiffs Donnie Cummings, Christopher Jones, and Charles Beaty ("Plaintiffs"), on behalf of themselves and all others similarly situated. Plaintiffs and those similarly situated were paid by Defendant Cenergy International Services, LLC ("Cenergy" or "Defendant") for their work as well site/drill site managers for Chevron Corporation ("Chevron") and were denied proper compensation as required by federal wage and hour laws. These employees are similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

2. Plaintiffs are separately pursuing claims against Chevron for their unpaid wages. *See McQueen et al. v. Chevron*, N.D. Cal. Case No. 4:16-cv-02089-JSW; *Cummings v. Chevron*,

-1-
COLLECTIVE ACTION COMPLAINT

JAMS Arbitration Ref. No. 1100086694. In those cases, multiple site managers—including the Plaintiffs here—allege that Chevron intentionally misclassified them as independent contractors and failed to pay required overtime wages.

3. Although Chevron controlled Plaintiffs' work and directly supervised Plaintiffs, Chevron attempted to insulate itself from liability by creating an artificially complex structure. First, Cenergy acted as an intermediary and was responsible for transferring payments from Chevron to Plaintiffs. Second, Cenergy required that Plaintiffs accept payment through corporate entities, rather than as individuals.

4. Cenergy entered into agreements with Plaintiffs through their corporate entities (which were generally single-member limited liability corporations) in which Cenergy required— as a condition of employment—that Plaintiffs 1) agree to be classified as independent contractors and not employees, 2) agree that these corporate entities would be solely responsible for payment of all wages to Plaintiffs, and 3) agree to indemnify Cenergy and Chevron against any loss that Plaintiffs might suffer and defend against any suit Plaintiffs might bring. The agreement between Cenergy and Plaintiff Cummings' corporate entity, Cummings Consulting LLC, is attached as **Exhibit A**. The agreement between Cenergy and Plaintiff Jones' corporate entity, Chris Jones DSM, LLC, is attached as **Exhibit B**. The agreement between Cenergy and Plaintiff Beaty's corporate entity, Drilling Consultant, Inc., is attached as **Exhibit C**.

5. Based on these agreements, Cenergy is now seeking payment from Plaintiffs for Chevron's cost to defend *against Plaintiffs' claims* and, presumably, for any wages Chevron may be found to owe. Since Plaintiffs initiated their cases against Chevron, Cenergy has demanded that Plaintiffs pay Chevron's ongoing legal fees to defend the very action in which Plaintiffs seek wages from Chevron. The demand letter sent from Cenergy to Plaintiff Cummings (nominally through Cummings Consulting LLC) is attached as **Exhibit D**. On information and belief, Cenergy has sent (or attempted to send) similar communications to Plaintiffs Jones and Beaty (nominally through the corporate entities they created at Cenergy's request).

6. *McQueen v. Chevron* was recently conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b), and notice has been distributed to other potential opt-in plaintiffs.

It is likely that other workers will join that case who were paid through Cenergy.

7. The FLSA Collective here is made up of all persons who have worked through Cenergy for Chevron as well site/drill site managers and who opt-in to the *McQueen v. Chevron* litigation to pursue claims for unpaid overtime against Chevron.

8. Plaintiffs seek a declaration that Cenergy has no legal right to attempt to collect or obtain—through court or arbitration—the wages that Plaintiffs seek from Chevron or associated penalties, damages, and interest, or Chevron's or Cenergy's costs incurred in defense of those claims, including but not limited to attorneys' fees and costs.

## THE PARTIES

9. Plaintiff Donnie Cummings is an individual residing in Bakersfield, California. Mr. Cummings worked for Chevron, through Cenergy, and received payments under the name "Cummings Consulting LLC" for part of his employment with Chevron.

10. Plaintiff Christopher Jones is an individual residing in Arnold, Missouri. Mr. Jones worked for Chevron, through Cenergy, and received payments under the name "Chris Jones DSM, LLC."

11. Plaintiff Charles Beaty is an individual residing in Tehachapi, California. Mr. Beaty worked for Chevron, through Cenergy, and received payments under the name "Drilling Consultants, Inc."

12. Defendant Cenergy International Services, LLC is a Delaware corporation, with its principal place of business in Houston, Texas.

13. Chevron, through Cenergy, had a practice of unlawfully classifying some workers, including Plaintiffs and members of the FLSA Collective, as "independent contractors" (also referred to as "consultants").

14. Chevron, through Cenergy, maintained a practice of paying some of their workers, including Plaintiffs and the FLSA Collective, a day rate and not paying them any overtime compensation. Plaintiffs, and other site managers, were under Chevron's direction and control and were all subject to the same unlawful pay practice.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under 28 U.S.C. § 2201 for a declaratory judgment with respect to the FLSA, 29 U.S.C. §§ 201 *et seq*.

16. Venue is proper in the United States District Court, Eastern District of California pursuant to 28 U.S.C. § 1391, because Plaintiffs Cummings and Beaty reside here, Defendant conducts business here, and because a substantial part of the events giving rise to the claims occurred in this district.

17. This action is properly assigned to the Bakersfield Division of the Eastern District of California because a substantial portion of the events or omissions giving rise to the claims occurred in Kern County, California.

## FACTUAL ALLEGATIONS

A. *Wage Claims against Chevron*

18. During the applicable statutory period, Plaintiffs and those similarly situated worked as site managers for Chevron. Chevron, through their policies, practices, and supervisors, directed the work activity of Plaintiffs and other site managers. Chevron had the authority to discipline Plaintiffs and other site managers.

19. Chevron classified (and continues to classify) their site managers, including Plaintiffs and those similarly situated, as exempt from FLSA wage and hour protections.

20. Plaintiffs and other site managers worked for or are currently working for Chevron as well site supervisors, and were paid a day rate with no overtime premium for hours worked over forty (40) per week.

21. Chevron unlawfully classified Plaintiffs and members of the FLSA Collective as independent contractors or consultants to avoid their obligations to pay overtime, and to reap the benefits of such illegal classification such as reduced tax liability, avoiding workers' compensation, and passing operating costs on to the workforce.

22. Plaintiffs were hired by Chevron. Plaintiffs and the FLSA Collective worked exclusively for Chevron through Cenergy on a full-time and continuing basis. Plaintiffs and those similarly situated did not sell or advertise their services to the general public, or work for any

other company other than Chevron (through Cenergy).

23. Plaintiffs and the FLSA Collective were subject to Chevron's direction and control regarding the manner in which they performed their work. For example:

A. Chevron's well site superintendents supervised Plaintiffs and the FLSA Collective's work. Chevron also determined and set Plaintiffs' work schedules.

B. Chevron determined Plaintiffs' daily rate of pay, which Plaintiffs were unable to negotiate.

C. Chevron provided Plaintiffs and the FLSA Collective the equipment needed to complete their work, including a laptop, email address, printer, wireless internet access, and a uniform.

D. Chevron required that Plaintiffs and the FLSA Collective follow Chevron's instructions, processes, and policies regarding the method by which their work was to be completed.

E. Chevron required that Plaintiffs and FLSA Collective submit daily reports consisting of specific details outlining the work completed each day. Chevron provided the software necessary to complete and submit these reports.

F. Chevron required that Plaintiffs travel to and stay at each worksite, typically for extended periods of time. Chevron also provided on-site housing for Plaintiffs and other well site managers at their worksites.

G. Chevron required that Plaintiffs and the FLSA Collective complete weekly invoices listing the specific days worked, locations, and expenses. Chevron required that Plaintiffs and other well site managers have their invoices approved by Chevron's well site superintendents.

H. Chevron required that Plaintiffs and FLSA Collective attend meetings to discuss details and specifications related to the work to be completed at worksites.

I. Chevron required that Plaintiffs and FLSA Collective complete training to ensure compliance with their instructions, processes, and policies.

J. Chevron required that Plaintiffs and the FLSA Collective obtain specific

certifications in order to perform work at Chevron's work sites.

24. Plaintiffs and those similarly situated routinely worked in excess of forty (40) hours per week for Chevron without receiving proper overtime pay.

25. Chevron controlled and communicated Plaintiffs' work schedule to them. Chevron typically required Plaintiffs to work stints that consisted of fourteen (14) consecutive days, with fourteen (14) days off between stints. Plaintiffs' typical hours worked were from 5:30 p.m. to at least 6 a.m. or 5:30 a.m. to at least 6 p.m (at times, longer). Chevron did not keep accurate records of the hours Plaintiffs and other well site managers worked.

26. Chevron is aware of wage and hour laws, and their unlawful conduct has been widespread, repeated, and consistent.

27. Chevron's conduct was willful and in bad faith. Chevron operated under a scheme that has caused significant damages to Plaintiffs and the similarly situated individuals.

   B. *Cenergy's Contracts and Efforts to Collect from Plaintiffs*

28. As a condition of working for Chevron through Cenergy, Plaintiffs and other similarly situated site managers were required to form corporate entities through which they received their wages.

29. As a condition of working for Chevron through Cenergy, Plaintiffs and other similarly situated site managers were required to sign a "Master Services Agreement."

30. Cenergy's Master Services Agreement was provided as-is to Plaintiffs and was not negotiable.

31. Cenergy's Master Services Agreement (provided as **Exhibits A–C**) contains an indemnification clause, which provides:

> Contractor [Plaintiff] shall be liable for any claim arising out of any illness, injury or death to Contractor employees, agents or vendors, or for any claim arising out of any loss or damage to the property of Contractor, its employees agents or vendors arising out of or relating to the Agreement or the performance of the Services under this Agreement and **REGARDLESS OF WHETHER CAUSED OR BROUGHT ABOUT BY CIS [Cenergy] or CIS CUSTOMER's [Chevron's] NEGLIGENCE OR FAULT (INCLUDING ACTIVE, PASSIVE, SOLE, JOINT OR CONTRIBUTORY NEGLIGENCE) OR ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING BREACH OF WARRANTY, BREACH OF AGREEMENT, STATUTE OR STRICT**

**LIABILITY** and Contractor shall defend, protect, indemnify and hold harmless CIS, its parent, subsidiary and affiliated companies and all of their officers, directors, employees and representatives and Customers from and against any loss, cost, claim, obligation to indemnify another, suit, judgment, award or damage (including reasonable attorney's fees and costs) on account of such illness, injury, death, loss or damage."

32. Cenergy has cited to this paragraph of the Master Services Agreement to demand that Plaintiffs reimburse Cenergy for Chevron's costs of defending against Plaintiffs' claims for unpaid wages. (*See* **Exhibit D**.)

33. Cenergy's Master Services Agreement provides that disputes shall be resolved through arbitration in Houston Texas under the AAA's "Construction Industry Rules:"

Arbitration. In the event that the mediation fails to settle the Dispute, then, subject to Article 20 (d) below, the Dispute shall be submitted to mandatory and binding arbitration conducted by the AAA in accordance with its Construction Industry Rules then in effect. Such arbitration shall be conducted before a single arbitrator in Houston Texas. The arbitration shall be conducted in accordance with the International Institute for Conflict Prevention and Resolutions Rules at present in force, exclusive of its principles of conflicts of laws for the determination of the rights and remedies under the Agreement and for all aspects of the award hereunder, except to the extent that United States General Maritime law, exclusive of its principles of conflicts of laws governs the Dispute at issue. The Arbitrator shall have the power to award reasonable attorneys fees, costs and expenses to the prevailing party in any such arbitration proceeding.

34. AAA's Construction Industry Rules provide multiple terms that are inconsistent with accepted standards for arbitration of employment disputes. For example, to bring a claim, a worker would have to pay an initial filing fee of **$7,000** – more than fifteen times the cost to file in court. Additionally, these rules improperly authorize prevailing-party attorneys' fees to an employer-defendant in a wage claim, which are not legally available.

35. Cenergy has threatened to pursue claims against Plaintiffs, and could attempt to do so under these arbitration provisions, which are not enforceable as to employment disputes.

36. Cenergy and Chevron are not legally entitled to contract around the FLSA. Cenergy's attempt to pass on to Plaintiffs the cost of complying with the FLSA and the cost of defending against FLSA claims is unlawful, and Plaintiffs seek a declaratory judgment to that end.

37. As a result of Cenergy's intimidation tactics, one opt-in plaintiff has withdrawn from the *McQueen* action after receiving Cenergy's threats.

**COLLECTIVE ACTION ALLEGATIONS**

38. Plaintiffs bring this action on behalf of themselves and other similarly situated employees as authorized under the FLSA, 29 U.S.C. § 216(b). The employees similarly situated are as follows:

**FLSA Collective:** All Persons who worked for Chevron through Cenergy as well site/drill site managers and who opt into the *McQueen v. Chevron* action.

39. Plaintiffs and the FLSA are entitled to a declaratory judgment under 28 U.S.C. § 2201 to the extent that Cenergy may attempt to use the indemnification provision in its Master Services Agreement to seek payments to which it has no legal right.

**CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT - FAIR LABOR STANDARDS ACT**

<u>28 U.S.C. § 2201; 29 U.S.C. §§ 201 *et seq.*</u>

(On Behalf of Plaintiffs and the FLSA Collective)

40. Plaintiffs and the FLSA Collective allege and incorporate by reference the allegations in the preceding paragraphs.

41. At all relevant times, Cenergy and Chevron were engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203, and were covered by the FLSA.

42. The FLSA requires covered employers, such as Chevron, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

43. Plaintiffs and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over 40 in a workweek. By failing to compensate Plaintiffs and the FLSA Collective overtime compensation, Chevron violated the FLSA, 29 U.S.C. §§ 201 *et seq*.

44. Chevron may not contract around the FLSA by insisting that Cenergy indemnify it for its failure to pay all legally required wages.

45. Similarly, Chevron may not contract around the FLSA by insisting that Plaintiffs, through their corporate entities, pay themselves all legally required wages.

46. Chevron may not contractually obligate Plaintiffs, through their corporate entities and through Cenergy, to pay the costs of defense for suits Plaintiffs bring under the FLSA.

47. Cenergy may not contract around the FLSA by insisting that Plaintiffs, through their corporate entities, pay themselves all legally required wages.

48. Similarly, Cenergy may not contract Chevron around the FLSA by insisting that Plaintiffs, through their corporate entities, pay themselves all legally required wages.

49. Cenergy many not contractually obligate Plaintiffs, through their corporate entities, to pay the costs of defense for suits Plaintiffs bring under the FLSA.

50. Plaintiffs are entitled to a declaratory judgment because there is an actual case or controversy since Cenergy is seeking to collect amounts to which it has no right, and will continue to seek such costs of defense and wages unless and until this Court enters a judgment declaring that Cenergy may not pursue these claims.

51. Plaintiffs, on behalf of themselves and the FLSA Collective, seek recovery of attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all members of the Collective Class, pray for relief as follows:

A. Designation of this action as a collective action on behalf of Plaintiffs and those similarly situated and issuance of appropriate notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated apprising them of the pendency of this action, and permitting them to timely join this action;

B. Judgment that Cenergy may not seek indemnification or costs of defense, in court or arbitration, from Plaintiffs and those similarly situated under the Cenergy Master Services Agreement;

C. Judgment that Cenergy may not force Plaintiffs and those similarly situated to arbitrate in Texas under the Construction Industry Rules;

D. An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216 and/or other applicable laws;

E. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

F. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

Dated: April 5, 2017                **NICHOLS KASTER, LLP**

By:   s/Daniel S. Brome
        Daniel S. Brome

Attorneys for Plaintiffs and Others Similarly Situated