Matthew C. Helland, CA SBN 250451
helland@nka.com
Daniel S. Brome, CA SBN 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Plaintiffs and Others
Similarly Situated

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Donnie Cummings, Christopher Jones, and Charles Beaty, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Cenergy International Services, LLC,<br><br>Defendant. | Case No. 1:17-cv-00484-LJO<br><br>**MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Lawrence J. O'Neill<br>Date: Thursday, June 1, 2017<br>Time: 8:30 a.m.<br>Courtroom: 4<br><br>Complaint Filed: April 5, 2017 |

## INTRODUCTION

Plaintiffs filed this declaratory relief action against Defendant Cenergy International Services, LLC ("Cenergy") seeking a declaration that Cenergy may not recoup Plaintiffs' wages through a contractual indemnification agreement, and that Cenergy may not force Plaintiffs to pay the costs of defending Plaintiffs' own lawsuit seeking those same wages. Cenergy has now instituted arbitration proceedings in Houston, Texas seeking to enforce the very indemnification agreement that Plaintiffs put at issue in this case. Because the indemnification agreement is unenforceable and the arbitration agreement is unconscionable, Plaintiffs seek a preliminary injunction preventing Cenergy from proceeding with those arbitrations. The Court should grant

Plaintiffs' request for preliminary injunction because Plaintiffs have a high likelihood of success on the merits, they will suffer irreparable harm if forced to arbitrate in Texas, the public policy weighs in favor of an injunction, and the balance of harms tips in Plaintiffs' favor.

## FACTUAL BACKGROUND

Plaintiffs are three individuals who performed work for Chevron, the global oil company, at well sites and drill sites across the country. Plaintiffs are now pursuing litigation against Chevron, seeking unpaid overtime wages. *See McQueen, et al. v. Chevron*, N.D. Cal. Case No. 4:16-cv-02089-JSW; *Cummings v. Chevron*, JAMS Arbitration Ref. No. 1100086694. In those cases, multiple site managers—including the Plaintiffs here—allege that Chevron intentionally misclassified them as independent contractors and failed to pay required overtime wages. Although Chevron controlled Plaintiffs' work and directly supervised Plaintiffs, Chevron and Cenergy attempted to insulate themselves from liability by creating an artificially complex structure. First, Cenergy acted as an intermediary and was responsible for transferring payments from Chevron to Plaintiffs. (Compl., ECF No. 1, ¶ 3.) Second, Cenergy required that Plaintiffs accept payment through corporate entities, rather than as individuals. (*Id.*) Third, Cenergy's contract with Plaintiffs' corporate entities provided that Plaintiffs would indemnify Cenergy for any losses under the contract – including, as Cenergy argues now, for any unpaid wages that Plaintiffs might later seek.

Plaintiff Donnie Cummings is an individual residing in Bakersfield, California. (Compl., ECF No. 1, ¶ 9.) Mr. Cummings worked for Chevron, through Cenergy, and received payments under the name "Cummings Consulting LLC" for part of his employment with Chevron. (*Id.*) Plaintiff Christopher Jones is an individual residing in Arnold, Missouri. (*Id.* ¶ 10.) Mr. Jones worked for Chevron, through Cenergy, and received payments under the name "Chris Jones DSM, LLC." (*Id.*) Plaintiff Charles Beaty is an individual residing in Tehachapi, California. (*Id.* ¶ 11.) Mr. Beaty worked for Chevron, through Cenergy, and received payments under the name "Drilling Consultants, Inc." (*Id.*)

As a condition of working for Chevron through Cenergy, Plaintiffs were required to form corporate entities through which they received their wages, and were required to sign a "Master

-2-
MEMORANDUM IN. SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Services Agreement." (ECF No. 1, ¶¶ 4, 28-30.) Cenergy's Master Services Agreement was provided as-is to Plaintiffs and was not negotiable. (*Id.* ¶ 30.) Cenergy entered into these agreements with Plaintiffs' corporate entities (which were generally single-member limited liability corporations). (*Id.* ¶¶ 4, 28.) Cenergy required—as a condition of employment—that Plaintiffs 1) agree to be classified as independent contractors and not employees, 2) agree that these corporate entities would be solely responsible for payment of all wages to Plaintiffs, and 3) agree to indemnify Cenergy and Chevron against any loss that Plaintiffs might suffer and defend against any suit Plaintiffs might bring. (*See* Compl. Exs. A-C, ECF Nos. 1-1 – 1-3.)

Based on these agreements, Cenergy is now seeking payment from Plaintiffs for Chevron's cost to defend *against Plaintiffs' own claims against Chevron* and, presumably, for any wages Chevron may be found to owe. Since Plaintiffs initiated their cases against Chevron, Cenergy has demanded that Plaintiffs pay Chevron's ongoing legal fees to defend that case. On March 21, 2017, Cenergy sent a demand letter sent to Plaintiff Cummings (nominally through Cummings Consulting LLC) demanding over $15,000. (*See* Compl. Ex. D, ECF No. 1-4.)

The indemnification clause at issue provides:

> Contractor [Plaintiff] shall be liable for any claim arising out of any illness, injury or death to Contractor employees, agents or vendors, or for any claim arising out of any loss or damage to the property of Contractor, its employees agents or vendors arising out of or relating to the Agreement or the performance of the Services under this Agreement and **REGARDLESS OF WHETHER CAUSED OR BROUGHT ABOUT BY CIS [Cenergy] or CIS CUSTOMER's [Chevron's] NEGLIGENCE OR FAULT (INCLUDING ACTIVE, PASSIVE, SOLE, JOINT OR CONTRIBUTORY NEGLIGENCE) OR ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING BREACH OF WARRANTY, BREACH OF AGREEMENT, STATUTE OR STRICT LIABILITY** and Contractor shall defend, protect, indemnify and hold harmless CIS [Cenergy], its parent, subsidiary and affiliated companies and all of their officers, directors, employees and representatives and Customers [Chevron] from and against any loss, cost, claim, obligation to indemnify another, suit, judgment, award or damage (including reasonable attorney's fees and costs) on account of such illness, injury, death, loss or damage."

(Compl. Exs. A, C, ECF Nos. 1-1, 1-3, ¶ 15; *accord* Compl. Ex. B, ECF No. 1-2, ¶ 23.) Cenergy has cited to this paragraph of the Master Services Agreement to demand that Plaintiffs reimburse Cenergy for Chevron's costs of defending against Plaintiffs' claims for unpaid wages. (*See*

MEMORANDUM IN. SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Compl. Ex. D, ECF No. 1-4.)

Cenergy's Master Services Agreement provides that disputes shall be resolved through arbitration in Houston Texas under the AAA's "Construction Industry Rules:"

> <u>Arbitration</u>. In the event that the mediation fails to settle the Dispute, then, subject to Article 20 (d) below, the Dispute shall be submitted to mandatory and binding arbitration conducted by the AAA in accordance with its Construction Industry Rules then in effect. Such arbitration shall be conducted before a single arbitrator in Houston Texas. The arbitration shall be conducted in accordance with the International Institute for Conflict Prevention and Resolutions Rules at present in force, exclusive of its principles of conflicts of laws for the determination of the rights and remedies under the Agreement and for all aspects of the award hereunder, except to the extent that United States General Maritime law, exclusive of its principles of conflicts of laws governs the Dispute at issue. The Arbitrator shall have the power to award reasonable attorneys fees, costs and expenses to the prevailing party in any such arbitration proceeding.

(Compl. Exs. A, C, ECF Nos. 1-1, 1-3, ¶ 21; Compl. Ex. B, ECF No. 1-2, ¶ 20.) AAA's Construction Industry Rules provide multiple terms that are inconsistent with accepted standards for arbitration of employment disputes. (*See* Helland Dec. Exs. 3-4.)

For example, these rules impose extraordinary administrative filing fees - $3,250 for a non-monetary claim such as this one and $7,000 for an undetermined monetary claim. (Helland Decl. Ex. 4.) These administrative fees do not cover any part of the costs of the arbitrator, court reporter services, or room rental—they go straight to AAA. (Helland Decl. Ex. 3 at 11.) The $7,000 filing fee is more than fifteen times the cost to file in court. The rules also provide that the parties split the cost of the arbitration, and allow the arbitrator to impose the entire cost of the arbitration on a prevailing employee-Plaintiff. (*Id.* at 33, 36.) The rules, in conjunction with the arbitration agreements, also allow the arbitrator to award prevailing party attorneys' fees to an employer, which are not legally cognizable. (*Id.* at 33; Compl. Exs. A, C, ECF Nos. 1-1, 1-3, ¶ 21; Compl. Ex. B, ECF No. 1-2, ¶ 20.)

As an added layer of unconscionability, the survival clause of the contracts is non-mutual. (Compl. Exs. A, C, ECF Nos. 1-1, 1-3, ¶ 22; Compl. Ex. B, ECF No. 1-2, ¶ 21.) Specifically, only the "covenants and promises of the Consultant" survive termination of the agreement. (*Id.*) That means that Plaintiffs' entities arguably have no more remaining rights against Cenergy—

-4-

including the right to arbitrate—even though Cenergy retains its full rights against Plaintiffs' entities.

Cenergy has now filed arbitration claims, in Houston, purportedly under the AAA Construction Industry Rules. (Helland Dec. Exs. 1-2.) While Cenergy named Plaintiffs' corporate entities as respondents in these arbitrations (and not Plaintiffs themselves), Cenergy has explicitly stated that it will try to collect money from Plaintiffs as individuals. (See Helland Dec. Ex. 5.) Since Cenergy sent its threatening demand letters, one individual worker has withdrawn from the *McQueen* action—the underlying claim for unpaid FLSA wages. (See Helland Dec. Ex. 6.)

## **ARGUMENT**

Plaintiffs seek a preliminary injunction enjoining Cenergy from any attempts to collect indemnification from Plaintiffs, including any arbitrations pending against Plaintiffs through their corporate entities. "A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" *Id.* at 1132 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

Here, all four factors favor an injunction prohibiting Cenergy from pursuing its baseless claims in arbitration.

   1. <u>Plaintiffs Are Likely to Succeed on the Merits</u>

      *a. The Challenged Indemnification Clauses Violate Public Policy*

The challenged indemnification clauses are an unenforceable attempt to waive Plaintiffs' substantive statutory rights. Numerous courts have rejected efforts by employers to contract around the requirements of the FLSA in general, and to seek indemnification from employees in particular. Chevron's attempt to demand indemnification, through Cenergy, is a transparent

-5-

attempt to contract around its legal responsibilities as an employer.

At least four circuits have recognized that employers may not seek indemnification from employees for the obligation to pay wages required by the FLSA. *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) (no right of indemnification under the FLSA, and "the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law" that might create indemnification claim); *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1407–08 (10th Cir. 1992) ("Indemnity actions against employees work against the purposes of the FLSA. . . . Compliance with the FLSA will not be furthered if employees must defend against indemnity actions."); *Lyle v. Food Lion, Inc.,* 954 F.2d 984, 987 (4th Cir.1992) ("In effect, [the employer] sought to indemnify itself . . . for its own violation of FLSA, which . . . is something the FLSA simply will not allow."); *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986) ("[A]n employer who believed that any violation of the . . . provisions could be recovered from its employees would have a diminished incentive to comply with the statute."). District courts have consistently applied these principles and rejected attempts by employers seeking indemnity from employees for FLSA violations. *Quintana v. Explorer Enters., Inc.*, 2010 WL 2220310 (S.D. Fla. June 3, 2010); *Villareal v. El Chile, Inc.*, 601 F. Supp. 2d 1011, 1014–17 (N.D. Ill. 2009); *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311 (S.D.N.Y. 2001).

The *Gustafson* case is most directly on point. There, the plaintiff worked as a chauffeur for the defendant; like the Plaintiffs here, he was not directly employed by the company, but was instead classified as an independent contractor and received his pay through his own company. 171 F. Supp. 2d at 316. Mr. Gustafson's company, JAG, entered contracts in which JAG agreed to comply with all applicable federal and state laws and to indemnify Bell Atlantic against any losses or lawsuits. *Id.* at 317. When Mr. Gustafson sought unpaid overtime under the FLSA, the defendants argued that they were "entitled to indemnification from JAG for any damages assessed." *Id.* at 322. The court rejected the defendant's attempt to portray the claim as a breach of contract action, rather than an action for indemnification under the FLSA. *Id.* at 328. Likewise, the court placed no significance on the fact that the employer sought indemnification from JAG, the plaintiff's corporation, rather than the plaintiff himself. *Id.* Ultimately, the court followed

MEMORANDUM IN. SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Herman* and concluded "Allowing indemnification in cases such as this would permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute." *Id.*

The exact same reasoning will control this case, and will require judgment in Plaintiffs' favor. Like Gustafson, the Plaintiffs here were classified as independent contractors, and received their pay through their corporate entities. The agreements those entities entered into, in order to obtain work, ostensibly obligated them to accept responsibility for compliance with employment laws and indemnify the ultimate employer for any losses. As *Gustafson* concluded, this is a transparent attempt by an employer "to contract away their obligations under the FLSA," which is not permitted.

Because the indemnification clauses are contrary to the FLSA, Plaintiffs will succeed on the merits, and this favor supports a preliminary injunction.

### b. Plaintiffs Cannot Be Compelled to Arbitrate These Disputes

Plaintiffs are also likely to success on their argument that the arbitration agreements are unenforceable. Because the fundamental dispute here arises from Plaintiffs' unwaivable statutory employment claims, Plaintiffs cannot be compelled to arbitrate those claims if the arbitration procedures are unconscionable. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 104–06, 110–13 (2000). Here, the arbitration agreements are unenforceable because the agreements are contracts of adhesion, presented to Plaintiffs as a condition of their work for Chevron through Cenergy. *See* ECF No. 1, ¶¶ 3-4, 28-30; Compl. Exs. A-C, ECF Nos. 1-1 – 1-3. The agreements are substantively unconscionable because they require arbitration in Houston (where none of the Plaintiffs live), they limit or eliminate Plaintiffs' access to discovery, and they could impose costs on Plaintiffs far beyond what they would incur to file in court.

The arbitration agreements specify that arbitration must proceed under the American Arbitration Association ("AAA") Construction Industry Rules. (Compl. Exs. A, C, ECF Nos. 1-1, 1-3, ¶ 21; Compl. Ex. B, ECF No. 1-2, ¶ 20.) Unlike AAA's Employment Arbitration Rules, which provide certain fundamental protections for employee-plaintiffs, the Construction Industry Rules are geared toward disputes between businesses, and do not ensure protection for workers.

MEMORANDUM IN. SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

For example, the initial filing fee under the Construction Industry rules for a nonmonetary claim (such as Plaintiffs' claim for declaratory relief in this action) is $3,250 – more than eight times more than the cost to file in court. (Helland Dec. Ex. 4.) If Plaintiffs were forced to pursue their underlying claims for unpaid wages in AAA arbitration, the initial filing fee for an undetermined monetary claim is $7,000. (*Id.*) This provision is unconscionable and unenforceable. *Armendariz*, 24 Cal. 4th 83, 110–11 ("the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court.")

Moreover, the Construction Industry Rules provide that the parties will split the costs of the arbitrator from the outset. (Helland Decl. Ex. 3 at 36.) They also give the arbitrator the right to apportion arbitration costs as he sees fit at the conclusion of the arbitration—including assessing the full costs of arbitration to a prevailing Plaintiff-employee. (*Id.* at 33.) These provisions are contrary to California law and are unenforceable. *Armendariz*, 24 Cal. 4th at 110. And the fact that the arbitrator may shift the costs back to Cenergy at the end of the arbitration is of no import: "it is an insufficient judicial response to hold that he or she *may* be able to cancel these costs at the end of the process through judicial review. *Id.* This cost splitting "allocation scheme alone would render an arbitration agreement unenforceable." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002).

Finally, the "Fast Track" proceedings under Construction Industry Rules—which the AAA has already imposed—provide for ***no discovery*** except for the exchange of witness and exhibit lists five days before hearing. (Helland Decl. Exs. 1-2, 3 at 44.) Unlike *Armendariz*, in which the arbitration policy incorporated discovery procedures from the California Code of Civil Procedure, the policy here might afford ***no*** discovery at all. 24 Cal. 4th at 105. "The denial of adequate discovery in arbitration proceedings leads to the de facto frustration of the employee's statutory rights." *Id.* at 104. Because "adequate discovery is indispensable for the vindication of" statutory employment rights, the prohibition on discovery is unenforceable in this matter. *Id.*

The arbitration agreement itself contains unconscionable and unenforceable provisions. For example, the arbitration agreements require that the arbitrations take place in Houston, where

-8-
MEMORANDUM IN. SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendant is located, but where no Plaintiffs live. Because the venue selection was imposed by the stronger party and would create prohibitive costs on workers seeking to assert employment claims, it should be rejected as unconscionable. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1289 (9th Cir. 2006). And the arbitration agreement gives the arbitrator to award prevailing party fees and costs to Cenergy. The net effect of this provision is that Plaintiffs could be stuck not only paying for their *own wages* and *Chevron's* costs of defending Plaintiffs' wage actions, but also for *Cenergy's* costs in seeking indemnification. This unconscionable result would be contrary to the FLSA and cannot stand. *See Armendariz*, 24 Cal. 4th 83, 110–11.

Lastly, the arbitration agreement is non-mutual after the termination of the contract. (*See* Compl. Exs. A, C, ECF Nos. 1-1, 1-3, ¶ 22; Compl. Ex. B, ECF No. 1-2, ¶ 21.) While the Contractor's covenants and promises—including the covenant to arbitrate—survive the termination of the agreement, there is no provision that Cenergy's covenants and promises survive as well. (*See id.*) As a result, the obligation to arbitrate after the termination of the contract is non-mutual and inures *only* to Cenergy's benefit. "[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Armendariz*, 24 Cal. 4th at 120. This non-mutuality of the contract renders it unconscionable.

Importantly, the unconscionable AAA fees, cost splitting, and discovery limitations cannot be severed from the arbitration proceedings, because they AAA's requirements as part of the already-pending arbitrations. Moreover, the arbitrations are already pending in Houston, meaning the unconscionable venue provision cannot be severed. And the non-mutuality permeates the entire agreement because it cannot be remedied by severing any previsions. As a result, the entire agreement must be invalidated. *See Armendariz*, 24 Cal. 4th at 126-27 ("there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement"); *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 730 (N.D. Cal. 2012), *aff'd*, 549 F. App'x 692 (9th Cir. 2013).

Because Plaintiffs have a high likelihood of success in showing that the arbitration

-9-

agreements are unenforceable, the Court should enter a preliminary injunction preventing the Defendant from arbitrating against Plaintiffs in Texas under the Construction Industry Rules.

### 2. Plaintiffs Will Face Irreparable Harm Without an Injunction

Absent an injunction, Plaintiffs will be forced to either defend arbitration claims that Defendant has filed, or risk that Defendant will obtain judgments against Plaintiffs' corporate entities and seek to collect directly from Plaintiffs. Defendant has been quite candid that it intends to pursue claims against Plaintiffs as individuals. (Helland Dec. Ex. 5.)

This is particularly egregious given that the "debt" Defendant is attempting to collect arises from wages owed to Plaintiffs. *See Carillo v. Schneider Logistics, Inc.*, 2012 WL 556309, at *7 (C.D. Cal. Jan. 31, 2012), *aff'd*, 501 F. App'x 713 (9th Cir. 2012) (granting preliminary injunction because of risk that defendant's actions would prevent plaintiffs from receiving wages). In their essence, Defendant's arbitrations claim that Plaintiffs should a) be liable for any unpaid wages found owing *to themselves*, and b) pay for the costs of defending their own actions for unpaid wages. But "wages are not ordinary debts," and "it is essential to the public welfare that [a worker] receive his pay when it is due." *In re Trombley*, 31 Cal. 2d 801, 809 (1948). Cenergy's demand that Plaintiffs should pay Chevron's costs to defend against *Plaintiffs' own wage claims*, and should satisfy Chevron's liability as to *their own* wages, would cause irreparable harm.

Additionally, Defendant's actions may intimidate other workers from pursuing claims against Chevron for these wages. Since Defendant sent the demand letters that prompted this case, one individual who worked through Cenergy has withdrawn from the *McQueen* action. This intimidation constitutes irreparable harm and supports an injunction. *See Arcamuzi v. Cont'l Air Lines, Inc.,* 819 F.2d 935, 938–39 (9th Cir. 1987) (where "employees may be deterred from engaging in legitimate conduct," an employer's attempts to deter the exercise of protected activity may result in "irreparable harm far beyond economic loss").

District courts have repeatedly held that preliminary injunctions should issue to prevent an employer's efforts to silence workers from asserting their workplace rights or participate in a lawful investigation. *Harris v. Acme Universal, Inc.*, 2014 WL 3907107, at *7 (D. Guam Aug. 11,

MEMORANDUM IN. SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

2014) (finding irreparable harm element satisfied where defendant's conduct intimidated workers from cooperating with FLSA enforcement action); *Perez v. Fatima/Zahra, Inc.*, 2014 WL 2154092, at *3 (N.D. Cal. May 22, 2014) ("*Fatima/Zahra*") ("If Defendants are able to block Plaintiff's investigation, then Defendants' employees' rights under the FLSA may be irreparably injured."); *Perez v. Alkanan, Inc.*, 2013 WL 12129857, at *1 (C.D. Cal. Dec. 16, 2013) (enjoining defendant from threatening employees or instructing employees to provide false information to wage and hour investigation); *Carillo*, 2012 WL 556309, at *7 (defendant's conduct "has already intimidated workers, making them unwilling to raise workplace issues with their supervisors.").

Here, there is a risk of irreparable harm if Plaintiffs are forced to proceed in the arbitrations filed against them, and a risk that workers will be intimidated from pursuing FLSA claims or providing information to support those FLSA claims. This factor favors an injunction.

### 3. The Public Interest is Served by Enjoining Defendant's Unfounded Arbitrations

Wage and hour protections, which underlie Plaintiffs' claims, "concern not only the health and welfare of the workers themselves, but also the public health and general welfare." *Gould v. Maryland Sound Industries, Inc.*, 31 Cal. App. 4th 1137, 1148 (1995) (citation and quotation marks omitted). The FLSA in particular involves important public-private rights, and the public therefore has a strong interest in the resolution of FLSA claims. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945) (recognizing the public nature of private FLSA rights); *Fatima/Zahra*, 2014 WL 2154092, at *3 ("There is a strong public interest in favor of enforcement of the FLSA").

This essential point supports an injunction. *Carrillo*, 823 F. Supp. 2d at 1046. Here, Defendant's actions are aimed at delaying and avoiding FLSA compliance. Allowing Defendant to proceed with collection actions—even if they are ultimately unsuccessful—based on the flawed theory that workers can be responsible for their own wages would send a message that employers may flaunt the law with impunity. This Court should not encourage litigation tactics that reward employers in FLSA actions.

### 4. The Balance of Equities Tips Strongly in Favor of an Injunction

A preliminary injunction will prevent the expense of arbitrating under an unenforceable

-11-

arbitration agreement regarding an unenforceable contract term. It will prevent Plaintiffs from having to defend claims in Houston, where none of them live. It will prevent inconsistent arbitration decisions (since Cenergy has filed separate arbitrations against Plaintiffs' entities), and it will freeze Defendant's intimidation tactics against workers lawfully seeking to exercise their rights under the FLSA. All of these equities counsel strongly in favor of an injunction.

On the other hand, Defendant will not suffer any prejudice due to the delay caused by an injunction. If Defendant ultimately prevails in this action, it will be able to pursue its claims at that point, and it will be able to use the resulting judgment to prove its case in those arbitrations. Defendant will suffer *no* prejudice if its collections efforts are put on hold. On the other hand, if Plaintiffs ultimately prevail here, they will suffer considerable harm if they are forced to simultaneously defend arbitration claims while litigating this action. This factor favors an injunction. *See Carillo*, 2012 WL 556309, at *7 ("in contrast to plaintiffs who will suffer serious injury absent an injunction, [defendant] will not suffer substantial hardship" from an injunction); *Fatima/Zahra*, 2014 WL 2154092, at *3 ("Defendants have no legitimate interest" in inhibiting the plaintiff's investigation of FLSA claims).

## **Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court enjoin Defendant from attempting to collect or obtain—through court or arbitration—the wages that Plaintiffs seek from Chevron; associated penalties, damages, and interest relating to those wages; or Chevron's or Cenergy's costs incurred in defense of those claims, including but not limited to attorneys' fees and costs. Additionally, Plaintiffs respectfully request that the Court specifically enjoin Defendant from pursuing such claims in arbitration in Texas under the Construction Industry Rules.

Dated: May 1, 2017          **NICHOLS KASTER, LLP**

By:    s/Matthew C. Helland
       Matthew C. Helland
Attorneys for Plaintiffs and Others Similarly Situated