1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9    **DONNIE CUMMINGS, et al.,**                    **1:17-cv-00484-LJO-JLT**

10                        **Plaintiffs,**             **MEMORANDUM DECISION AND**
                                                      **ORDER**
11                    **v.**
                                                      **(Doc. 7)**
12   **CENERGY INTERNATIONAL SERVICES,**
     **LLC,**
13                        **Defendant.**

14

15                          **I. <u>INTRODUCTION</u>**

16

17          Currently pending before the Court are Plaintiffs' Donnie Cummings, Christopher Jones, and

18   Charles Beaty ("Plaintiffs") motion for a preliminary injunction against Defendant Cenergy

19   International Services, LLC ("Cenergy") and Cenergy's motion to dismiss Plaintiffs' complaint for lack

20   of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure

21   12(b)(1) and (b)(6), respectively.  The hearings on these motions were vacated and the motions were

22   taken under submission.  For the reasons set forth below, Cenergy's motion to dismiss is GRANTED,

23   and Plaintiffs shall file an amended complaint within 14 days from the date of this order.  Plaintiffs'

24   motion for a preliminary injunction will be held in abeyance until after an amended complaint and

25   responsive pleading have been filed.

## II. <u>FACTUAL BACKGROUND</u>

Plaintiffs performed work for the Chevron corporation as well site/drill site managers, and allege they were intentionally misclassified as independent contractors by Chevron and impermissibly denied overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs are pursuing claims in collective actions under the FLSA against Chevron in separate proceedings: *McQueen, et al. v. Chevron*, No. 4:16-cv-02089-JSW (N.D. Cal.), filed on April 20, 2016, and *Cummings v. Chevron*, JAMS Arbitration Reference No. 1100086694.

According to Plaintiffs, although Chevron controlled Plaintiffs' work and directly supervised Plaintiffs, Chevron attempted to insulate itself from FLSA liability by creating an artificially complex structure to employ Plaintiffs. (Doc. 1, ¶ 3.) Specifically, Chevron contracted with Cenergy to be an intermediary between Chevron and Plaintiffs. As a condition of working for Chevron through Cenergy, Plaintiffs and others were required to form corporate entities through which they received wages. Plaintiff Donnie Cummings created Cummings Consulting LLC, through which he was paid for part of his employment with Chevron; Plaintiff Christopher Jones created Chris Jones DMS, LLC through which he received payments for his work from Chevron; and Plaintiff Charles Beaty created Drilling Consultants, Inc. through which he received payments for his work for Chevron. (Doc. 1, ¶¶ 9-11.)

Through these newly formed corporate entities, Plaintiffs entered into Master Service Agreements ("MSAs") with Cenergy under which they agreed (1) to be classified as independent contractors and not employees; (2) that these corporate entities would be solely responsible for payment of all wages to Plaintiffs; and (3) to indemnify Cenergy and Chevron against any loss arising out of the agreement. These MSAs were presented to Plaintiffs as-is with no negotiation, and signing the MSAs was a condition of working for Chevron through Cenergy. An indemnity provision contained in the MSAs required the following:

> Contractor [corporate entity] shall be liable for any claim arising out of any illness, injury or death to Contractor employees, agents or vendors, or for any claim arising out of any loss or damage to the property of Contractor, its employees agents or vendors

arising out of or relating to the Agreement or performance of the Services under this Agreement and **REGARDLESS OF WHETHER CAUSED OR BROUGHT ABOUT BY CIS [Cenergy] OR CIS CUMSTOER'S [Chevron] NEGLIGENCE OR FAULT (INCLUDING ACTIVE, PASSIVE, SOLE, JOINT OR CONTRIBUTORY NEGLIGENCE) OR ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING BREACH OF WARRANTY, BREACH OF AGREEMENT, STATUTE OR STRICT LIABILITY** and Contractor shall defend, protect, indemnify and hold harmless CIS, its parent, subsidiary and affiliated companies and all of their officers, directors, employees and representatives and Customers from and against any loss, cost, claim, obligation to indemnify another, suit, judgment, award or damage (including reasonable attorney's fees and costs) on account of such illness, injury, death, loss or damage.

(Doc. 1-1, p. 10; Doc. 1-2, p. 9; Doc. 1-3, p. 10.)  The MSAs also contained an arbitration provision that requires all disputes be resolved through arbitration in Texas under the American Arbitration Association's "Construction Industry Rules":

**Arbitration**.  All claims, disputes or controversies arising out of, in connection with or in relation to this Agreement or the Services, including any and all issues of arbitration of such claim, dispute or controversy (hereinafter "Dispute"), and regardless of whether the Dispute is based or claimed to be based in whole or in part on a claim by either Party of breach of this Agreement shall be subject to the following dispute resolution procedure:

(a)  Notice.  In the event that a Dispute arises between Contractor and [Cenergy], and/or between Contractor and a [Cenergy] Customer, Contractor shall immediately notify [Cenergy] of such Dipuste in writing in order to provide [Cenergy] with an opportunity to informally resolve the Dispute.

(b)  Mediation.  In the event that the informal dispute resolution efforts set out in 21 (a) above fail to settle the Dispute between Contractor and [Cenergy] within 30-days of such written notice the parties shall submit the Dispute to formal mediation which shall be conducted by the American Arbitration Association ("AAA") in Houston, Texas in accordance with the AAA Energy Industry Rules for Mediation then in effect.

(c)  Arbitration.  In the event that the mediation fails to settle the Dispute, then, subject to Article 20(d) below, the Dispute shall be submitted to mandatory and binding arbitration conducted by the AAA in accordance with its Construction Industry Rules then in effect.  Such arbitration shall be conducted before a single arbitrator in Houston, Texas.  The arbitration shall be conducted in accordance with the International Institute for Conflict Prevention and Resolutions Rules at present in force, exclusive of its principles of conflicts of laws for the determination of the rights and remedies under the Agreement and for all aspects of the award hereunder, except to the extent that United States General Maritime law, exclusive of its principles of conflicts of laws governs the Dispute at issue.  The arbitrator shall have the power to award reasonable attorney's fees, costs and expenses to the prevailing party in any such arbitration proceeding.

3

1   (Doc. 1-1, p. 11-12; Doc. 1-2, p. 8; Doc. 1-3, p. 11.)

2          On March 21, 2017, Cenergy sent a demand letter to Cummings Consulting, LLC ("CCLLC"),

3   indicating it had become aware that "an employee of Cummings Consulting, LLC" (*i.e.*, Plaintiff

4   Donnie Cummings) had opted to be a member of the purported FLSA class action against Chevron

5   pending before the U.S. District Court for the Northern District of California in case number 4:16-cv-

6   02089-JSW.   (Doc. 1-4, Exh. D, p. 2.)   Cenergy advised CCLLC that, "pursuant to a separate

7   agreement," Cenergy "may be obligated to defend and indemnify Chevron Corporation for any costs,

8   expenses, or other damages sustained as a result of that lawsuit" and that Chevron had already

9   demanded that Cenregy pay for legal fees and costs incurred in the defense of that FLSA lawsuit.   (*Id.*

10  at 4.)   Citing the MSA agreement between CCLLC and Cenergy executed in January 2014, Cenergy

11  demanded that CCLLC "reimburse [Cenergy] for any and all costs that it incurs or owes as a result of

12  the Lawsuit," including any attorneys' fees, amounts reimbursed to Chevron, costs, penalties, damages,

13  or any other losses.   (*Id.*)   Cenergy indicated it had already incurred $15,488.50 in costs and fees related

14  to the FLSA lawsuit against Chevron, and demanded that CCLLC remit that amount within 15 days of

15  the date of the demand letter.   (*Id.*)   If CCLLC failed to remit that amount within the 15-day window,

16  Cenergy stated it would "take immediate action to enforce its rights under the MSA" and would initiate

17  legal proceeds against CCLLC in Houston, Texas.   (*Id.*)

18         On April 5, 2017, Plaintiffs filed suit in this Court, on behalf of themselves and all others

19  similarly situated, seeking a declaration under 28 U.S.C. § 2201, the Declaratory Judgment Act

20  ("DJA"), that Cenergy has no legal right to attempt to collect or obtain, through court or arbitration, the

21  wages that Plaintiffs seek from Chevron or associated penalties, damages, and interest, or Chevron's or

22  Cenergy's defenses costs, including attorneys' fees.   Plaintiffs contend Chevron and Cenergy have

23  improperly attempted to "contract around the FLSA" by insisting Plaintiffs pay, through their corporate

24  entities, the wages Chevron is legally obligated to pay Plaintiffs under the FLSA and the costs of

25  Chevron's defense in the separate FLSA collective action.

1    On May 1, 2017, Plaintiffs filed a motion for preliminary injunction asserting that Cenergy has

2  commenced arbitration against Plaintiffs' corporate entities proceedings pursuant to the MSAs.

3  Plaintiffs seek to enjoin those arbitration proceedings and to halt Cenergy from attempting to collect

4  indemnification.   On May 2, 2017, Cenergy filed a motion to dismiss for lack of subject matter

5  jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under

6  Federal Rule of Civil Procedure 12(b)(6).

7                              **III. <u>LEGAL STANDARD</u>**

8  **A.    Rule 12(b)(1)**

9    A defendant may move for dismissal of an action for lack of subject matter jurisdiction under

10  Federal Rule of Civil Procedure 12(b)(1).   A motion to dismiss for lack of subject matter jurisdiction

11  will be granted if the complaint, on its face, fails to allege facts sufficient to establish subject matter

12  jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).   If a

13  plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter

14  jurisdiction and the case must be dismissed.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

15  101-02 (1998).

16    A jurisdictional challenge may be facial or factual in nature.  *Safe Air for Everyone v. Meyer*,

17  373 F.3d 1035, 1039 (9th Cir.2004).   In a facial attack, the court determines whether the allegations in

18  the complaint are facially sufficient to invoke federal jurisdiction, accepting all material allegations in

19  the complaint as true and construing them in favor of the party asserting jurisdiction.  *See Warth v.*

20  *Seldin*, 422 U.S. 490, 501 (1975).  Where the attack is factual, however, "[n]o presumptive truthfulness

21  attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial

22  court from evaluating for itself the merits of jurisdictional claims."  *Roberts v. Corrothers*, 812 F.2d

23  1173, 1177 (9th Cir. 1987) (internal quotation marks and citations omitted); *accord Safe Air for*

24  *Everyone*, 373 F.3d at 1039.

25

In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *See Safe Air for Everyone*, 373 F.3d at 1039; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

**B.     Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*., 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

6

1    more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare

2    assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'. . . are not

3    entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth,

4    allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice

5    and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

6    Cir. 2011).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting

7    all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*,

8    550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a

9    plaintiff should be afforded leave to amend.  *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv.,*

10   *Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

11   ## IV. ANALYSIS

12   **A.      The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. § 1331**

13          The parties disagree whether the Court has subject matter jurisdiction over Plaintiffs' complaint

14   seeking declaratory relief under the DJA.  Plaintiffs maintain the declaration they seek arises from their

15   rights under the FLSA, which confers federal-question jurisdiction under 28 U.S.C. § 1331.  Cenergy

16   argues that in the posture of this declaratory relief action, the FLSA arises only as a defense to

17   Cenergy's indemnity action, and it does not confer subject matter jurisdiction under the well-pleaded

18   complaint rule.

19          Federal-question jurisdiction pursuant to 28 U.S.C. § 1331 arises in two situations.  First, a

20   court may exercise federal-question jurisdiction where a federal right or immunity is "an element, and

21   an essential one, of the plaintiff's cause of action," *Franchise Tax Bd. v. Constr. Laborers Vacation*

22   *Trust for S. Cal.*, 463 U.S. 1, 11 (1983) (internal citation and quotation marks omitted).  Second,

23   federal-question jurisdiction arises where a state-law claim "necessarily raise[s] a stated federal issue,

24   actually disputed and substantial, which a federal forum may entertain without disturbing any

25   congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal*

7

1    *Prod., Inc., v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005).

2          To assess federal-question jurisdiction, courts apply the "well-pleaded complaint" rule under

3    which "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's

4    properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391-92 (1987).  "A defense is

5    not a part of a plaintiff's properly pleaded statement of his or her claim."  *Rivet v. Regions Bank*,

6    522 U.S. 470, 475 (1998).

7          Assessing federal-question jurisdiction in declaratory relief actions is sometimes difficult.  First,

8    the DJA itself is not an independent source of federal law that provides jurisdiction.  *Janakes v. U.S.*

9    *Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985) ("The use of the declaratory judgment statute does

10   not confer jurisdiction by itself if jurisdiction would not exist on the face of a well-pleaded complaint

11   brought without the use of 28 U.S.C. § 2201.").  Second, if the declaratory relief action raises a federal

12   issue only as a defense to a threatened coercive action, this will not supply federal-question jurisdiction.

13   In other words, if the declaratory relief plaintiff would be unable to state a coercive claim under the

14   federal law or substantial issue of federal law raised in the declaratory relief complaint, the federal law

15   is a defense only and does not supply jurisdiction under the well-pleaded complaint rule.  In such cases,

16   the analysis shifts:  "[w]here the complaint in an action for declaratory judgment seeks in essence to

17   assert a defense to an impending or threatened state court action, it is the character of the threatened

18   action . . . which will determine whether there is a federal-question jurisdiction in the District Court."

19   *Public Serv. Comm'n v. Wycoff Co. Inc*., 344 U.S. 237, 248 (1952).  To perform this analysis, courts

20   essentially "reposition the parties in a declaratory relief action by asking whether [the court] would

21   have jurisdiction had the declaratory relief defendant been a plaintiff seeking a federal remedy."

22   *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997); *see also Skelly Oil Co. v. Phillips*

23   *Petroleum Co.*, 339 U.S. 667, 671–73 (1950); *Franchise Tax Board*, 463 U.S. at 19 ("Federal courts

24   have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory

25   judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a

8

1    federal question.").

2          Here, Plaintiffs seek a declaration of their rights under the FLSA, which they claim supplies a

3    federal question for purposes of jurisdiction.  The FLSA, however, is raised only as a defense to

4    Cenergy's claim for indemnity under the MSAs.  Plaintiffs have no coercive action under the FLSA that

5    can be stated against Cenergy: there is no declaratory relief available under the FLSA itself, and

6    Cenergy is not alleged to be Plaintiffs' employer, either solely or jointly.   Under the factual

7    circumstances presented in the complaint, the FLSA is raised only as a defense to Cenergy's demand

8    for indemnity under the terms of the MSAs executed between Cenergy and Plaintiffs' corporate entities.

9    The assertion of a federal defense does not confer subject matter jurisdiction. *Janakes*, 768 F.2d at

10   1093 ("Á declaratory judgment plaintiff may not assert a federal question in his complaint if, but for the

11   declaratory judgment procedure, that question would arise only as a federal defense to a state law claim

12   brought by the declaratory judgment defendant in state court.").  There is also no indication that any of

13   the essential elements of Cenergy's contractual indemnity claim necessarily incorporate a substantial

14   question of federal law. *See Grable,* 545 U.S. at 314.  Thus, repositioning the parties and considering

15   the nature of Cenergy's indemnity action does not establish federal-question jurisdiction in this case.

16          Plaintiffs assert the FLSA "completely" preempts any state-law indemnity cause of action by

17   Cenergy.  Although federal preemption is ordinarily only a defense that does not confer jurisdiction, the

18   "complete preemption" doctrine is an exception to the well-pleaded complaint rule. *Caterpillar, Inc. v.*

19   *Williams*, 482 U.S. 386, 393 (1987).  Complete preemption operates when the preemptive force of a

20   statute is so extraordinary that it "converts an ordinary state common-law complaint into one stating a

21   federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*,

22   481 U.S. 58, 65 (1987).  "Once an area of state law has been completely pre-empted, any claim

23   purportedly based on that pre-empted state law is considered from its inception, a federal claim, and

24   therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

25

1    The Supreme Court has not extended complete preemption to the FLSA, and this Court is

2  unaware of any lower court recognizing such preemption.  Rather, courts have concluded the FLSA has

3  no complete preemptive force, reasoning that the statute itself contains no indication of express

4  preemption, and neither the Act itself nor its legislative history reveals a manifest congressional intent

5  to preempt state law claims.  *See, e.g., Hurt v. Del Papa Dist. Co., L.P.*, 425 F. Supp. 2d 853, 857 (S.D.

6  Tex. 2004) (FLSA does not implicate complete preemption doctrine).[1]  This is not to say that Cenergy's

7  indemnity claims under the MSAs are not preempted by the FLSA in the ordinary sense – but ordinary

8  preemption does not implicate the Court's subject matter jurisdiction.

9    In sum, Plaintiffs' declaratory relief action seeks a determination under the FLSA as a defense to

10  Cenergy's coercive claim for contractual indemnity, which does not supply federal-question

11  jurisdiction.  Moreover, the FLSA does not implicate the complete preemption doctrine and does not

12  transform Cenergy's coercive indemnity claim into one under federal law.  As pled, there is no federal-

13  question jurisdiction under the well-pleaded complaint rule, and the Court lacks subject matter

14  jurisdiction over this action.  Nonetheless, Plaintiffs argue diversity jurisdiction exists, and they seek

15  leave to amend their complaint to allege subject matter jurisdiction under 28 U.S.C. § 1332.

16  **B.    Complaint Lacks Allegations Sufficient to Establish Plaintiffs' Standing**

17    Plaintiffs seek a declaratory judgment regarding the enforceability of an indemnity provision of

18  contracts between Cenergy and Plaintiffs' corporate entities, and a judgment that Cenergy may not

19  force Plaintiffs and those similarly situated to arbitrate in Texas under the Construction Industry Rules.

20  (Doc. 1, p. 9.)  Cenergy moves to dismiss the suit arguing Plaintiffs lack standing to challenge the

21  enforceability of the MSAs because they are neither parties nor third-party beneficiaries under these

22

---

23  [1] *See also Fitzwater v. Manco Am.*, No. C-94-20321 (RMW), 1994 WL 809642 (N.D. Cal. Aug. 15, 1994) (holding FLSA does not completely preempt state law governing actions for wrongful termination in violation of public policy against

24  retaliatory discharge); *Cuomo v. Dreamland Amusements, Inc.,* No. 08 CIV. 7100 (JGK), 2008 WL 4369270 (S.D.N.Y. Sept. 22, 2008) (holding FLSA does not completely preempt state labor laws); *Mickle v. Wellman Prods. LLC,* No. 08-

25  CV0297-CVE-PJC, 2008 WL 3925266 (N.D. Okla. Aug. 20, 2008) (holding that "FLSA does not completely preempt state law claims" such that any claim seeking unpaid overtime compensation is inherently federal in nature).

1  agreements.

2      To bring suit in a federal court, a plaintiff must establish standing under the "case or

3  controversy" requirement of Article III to the U.S. Constitution.  *SEC v. Medical Committee for Human*

4  *Rights*, 404 U.S. 403, 407 (1972).  Standing is an essential element of federal-court subject matter

5  jurisdiction and involves both constitutional requirements derived from Article III and judicially

6  created prudential limitations.  *South Lake Tahoe v. California Tahoe*, 625 F.2d 231, 233 (9th Cir.

7  1980); *United States v. Mindel*, 80 F.3d 394, 396 (9th Cir. 1996).  The "irreducible constitutional

8  minimum of standing" contains three requirements:  (1) an "injury in fact" – a harm suffered by the

9  plaintiff that is concrete and particularized, actual and imminent, not hypothetical; (2) a causal

10  connection between the injury and the conduct complained of such that the injury is traceable to the

11  challenged action of the defendant; and (3) it must be likely that the injury will be redressed by a

12  favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 550, 560-61 (1992).  Generally, a plaintiff

13  who is neither a party nor a beneficiary to a contract lacks standing to enforce or challenge the

14  enforceability of its terms.  *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543 n.2 (9th Cir.

15  1987).

16      **1.      Injury to Plaintiffs in their Individual Capacities Not Sufficiently Alleged**

17      Plaintiffs first argue their action for declaratory relief arises "under the FLSA, not under

18  contract."  As the Court understands Plaintiffs' argument, Plaintiffs contend Cenergy's indemnity claim

19  abridges Plaintiffs' rights under the FLSA because Chevron has created a scheme to contractually shift

20  its FLSA liability to its alleged employees (Plaintiffs) through Cenergy, something Plaintiffs maintain

21  Chevron it is not permitted to do under the FLSA.  Plaintiffs further contend that because their rights

22  under the FLSA are impaired by Chevron shifting liability to them through Cenergy's indemnity claim,

23  they have standing to challenge the enforceability of the contract between Cenergy and Plaintiffs'

24  corporate entities.  Plaintiffs assert this scheme by Chevron and Cenergy is intended to "contract

25  around" Plaintiffs' individual rights under the FLSA, and urge the Court to consider the standing

1   inquiry from the perspective of the injuries to Plaintiffs' FLSA rights rather injuries accruing only to

2   Plaintiffs' corporate entities under the MSAs.

3           Even if the FLSA applied to Plaintiffs' employment relationship with Chevron, however,

4   Plaintiffs still have not established how they would be injured in their individual capacities.  Cenergy

5   seeks indemnity from Plaintiffs' corporate entities, not from Plaintiffs in their individual capacities.

6   Cenergy's indemnity claim might be precluded if the FLSA attaches to Chevron's relationship with

7   Plaintiffs, but it is the corporate entities who have standing to challenge Cenergy's indemnity claim, not

8   Plaintiffs in their individual capacities.  Although the complaint alleges Cenergy has threatened to

9   pursue claims against "Plaintiffs" (*see* Doc. 1, ¶ 35), the complaint also states that Cenergy made a

10  demand to "Plaintiffs" for reimbursement of Chevron's defense costs.  Cenergy's demand letter,

11  however, is attached to the complaint and unequivocally makes a demand on Plaintiffs' *corporate*

12  *entities*, not Plaintiffs as individuals.  The complaint does not clearly articulate a threat of litigation

13  against Plaintiffs in their individual capacities, which would have given rise to standing.[2]

14          **2.      Insufficient Allegations to Establish Plaintiffs Are Third-Party Beneficiaries**

15          Plaintiffs also contend they are third-party beneficiaries of the MSAs, establishing standing to

16  challenge the enforceability of the MSAs.  Plaintiffs note Cenergy required Plaintiffs to sign the MSAs

17  in order to perform work for Chevron, the MSAs were not negotiable, Plaintiffs each personally signed

18  the MSAs and were the workers who were ultimately paid under the contracts, and each MSA

19  expressly stated it was "binding upon any . . .  representatives of the parties hereto."  Cenergy argues

20  Plaintiffs cannot be deemed third-party beneficiaries to the MSAs because there is no language or

21  expressed intent in the MSAs showing Plaintiffs were meant to benefit from the agreements.

22          A third party may qualify as a beneficiary under the contract where the contracting parties have

23  

24  [2] Attached to Plaintiffs' motion for a preliminary injunction are email correspondence between Cenergy's and Plaintiffs' respective counsel, which occurred after the complaint was filed.  There is suggestion of a lawsuit against Plaintiffs in their individual capacities that may give rise to standing were it pled in the complaint.  (Doc. 6-3, p. 75-76.)  *Newcal Industries,*

25  *Inc. v. IKON Office Solution*, 513 F.3d 1038, 1056-57 (9th Cir. 2000) (third party can obtain standing to challenge contract enforceability where threatened with suit).

1   intended to benefit that third party and such intent appears on the terms of the contract. *Ascherman v.*

2   *Gen. Reinsurance Corp.*, 183 Cal. App. 3d 307, 311 (1986). It is well settled, however, enforcement of

3   a contract by persons who are only incidentally or remotely benefitted by it is not permitted. *Lucas v.*

4   *Hamm*, 56 Cal. 2d 583, 590-91 (1961) ("A third party should not be permitted to enforce covenants

5   made not for his benefit, but rather for others. He is not a contracting party; his right to performance is

6   predicated on the contracting parties' intent to benefit him . . . . "). While intent is pivotal, there is no

7   requirement that "both of the contracting parties must intend to benefit the third party . . . ." *Schauer v.*

8   *Mandarin Gems of Cal. Inc.,* 125 Cal. App. 4th 949, 958 (2005). Whether a third party is an intended

9   beneficiary or merely an incidental beneficiary to the contract is predicated on the parties' intent, which

10  is gleaned from reading the contract as a whole in light of the circumstances under which it was

11  entered. *Walters v. Marler*, 83 Cal. App. 3d 1, 33 (1978).[3]

12       While Plaintiffs note they each signed an MSA, Plaintiffs' signatures on the MSAs were not

13  made in their individual capacities – they each signed as the representative of their respective corporate

14  entity. (*See* Doc. 1-1, p. 13; Doc. 1-2, p. 11.)[4] The language of the MSA binding "representatives" of

15  the parties is also not evidence of third-party beneficiary status. This language was contained in a

16  "Survival of Covenants" clause, and Plaintiffs cite no law for the proposition that a survival clause such

17  as this binds Plaintiffs in their individual capacities, making them personally liable under the MSAs or

18  otherwise shows they were intended to benefit from the contracts. And, although Plaintiffs were the

19  workers ultimately paid under the contracts, this alone does not show they were more than incidental

20  beneficiaries of the MSAs. There are simply insufficient facts alleged to show that the MSAs were

21  intended to benefit Plaintiffs to consider them third-party beneficiaries.

22

23  [3] To sue as a third-party beneficiary of a contract under federal law, the analysis is the same: the third party must show that
24  the contract reflects the express or implied intention of the parties to the contract to benefit the third party. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999).

25  [4] The copy of the contract between Drilling Consultants, Inc. and Cenergy attached to the complaint is not signed. (Doc. 1-3, p. 13.)

1    Plaintiffs also cite several California cases for the broad proposition that employee classes are

2  third-party beneficiaries of contracts between their employers and other entities.  *See Amaral v. Cintas*

3  *Crop. No. 2*, 163 Cal. App. 4th 1157, 1193 (2008); *Tippet v. Terich*, 37 Cal. App. 4th 1517, 1533

4  (1995); *Dep't of Industrial Relations, Div. of Labor Standards Enf't v. Fid. Roof Co.*, 60 Cal. App. 4th

5  411, 426 (1997).  If Plaintiffs are considered employees of their respective corporate entities, Plaintiffs

6  assert these cases indicate they are third-party beneficiaries of the MSAs between Cenergy and the

7  corporate entities.  *Amaral*, *Tippet*, and *Fidelity Roof Co.*, however, are distinguishable and do not

8  stand for the broad proposition Plaintiffs urge.  As Cenergy notes, these cases involved public works

9  contracts where a statutory prevailing wage provision, which required payment of higher wages, was

10  inserted for the express benefit of the employees of the contractor.  *See Amaral, Tippet*, *Fidelity Roof*

11  *Co.*, *supra*.  The prevailing wage law was enacted to benefit employees, and the employees working on

12  the public works projects were thus intended beneficiaries of the wage provision.  Including the

13  prevailing wage provision in the contract was express evidence of the parties' intent to benefit the

14  contractor's employees, rendering them third-party beneficiaries of those contracts.  Here, there is no

15  similar provision in the MSAs that is for the express benefit of those who performed the work on behalf

16  of Plaintiffs' corporate entities.  For these reasons, Plaintiffs have not adequately alleged standing as

17  third-party beneficiaries.

18  **C.    Plaintiffs' Claim for Declaratory Relief is Viable**

19    Because the jurisdictional defects identified above appear curable and in the interest of

20  efficiency, the Court addresses the Fed. R. Civ. P. 12(b)(6) attack upon Plaintiff's declaratory relief

21  claim.  Cenergy argues the FLSA does not apply to its contracts with Plaintiffs' corporate entities

22  because Plaintiffs do not allege that Cenergy was their employer or that they were employees of

23  Cenergy.  According to Cenergy, the FLSA only applies to employers and employees, and any

24  prohibition on seeking indemnity for FLSA liability does not pertain to Cenergy.  *Bonnette v.*

25  *California Health & Welfare Agency*, 704 F.2d 1465, 1468 (9th Cir. 1983) (finding that in order for the

14

1  FLSA to apply, the defendant must be an "employer" within the meaning of the FLSA). As such,

2  Cenergy argues Plaintiffs cannot obtain a declaration against Cenergy under the FLSA.

3       Cenergy's argument is unpersuasive as it interprets Plaintiffs' claim for declaratory relief too

4  narrowly. First, although Plaintiffs lack a viable coercive claim against Cenergy under the FLSA (due

5  to a lack of an alleged employer-employee relationship between Plaintiffs and Cenergy), this alone does

6  not preclude Plaintiffs from seeking a declaration regarding the enforceability of Cenergy's indemnity

7  claim in relation to Plaintiffs' rights under the FLSA. Often, a declaratory relief plaintiff brings an

8  issue before the court that might otherwise need to await a coercive action brought by the declaratory

9  relief *defendant*. *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co*., 655 F.2d 938, 943

10 (9th Cir. 1981) ("[The Declaratory Judgment Act] brings to the present a litigable controversy, which

11 otherwise might only by [sic] tried in the future.").

12       Second, Plaintiffs' theory of the invalidity of Cenergy's indemnity claim under the FLSA is, at

13 this stage, theoretically viable.[5] Although not yet expressly decided by the Ninth Circuit, several circuit

14 courts have determined there is no right to contribution or indemnification for employers held liable

15 under the FLSA. *Herman v. RSR Sec. Servs., Ltd.,* 172 F.3d 132, 144 (2d Cir. 1999); *Lyle v. Food*

16 *Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992); *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408

17 (10th Cir. 1992); *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986). As noted

18 above, the prohibition on indemnification and contribution exists regardless of the status of the party

19 from whom it is sought – be it a co-employer, an employee, or other third-party. *See Herman*, 172 F.3d

20 at 143. Moreover, claims for indemnification arising under state law or under express contractual

21 provisions have been held to be preempted by the FLSA where the FLSA is applicable. *See, e.g., id.;*

22 *Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 328 (S.D.N.Y. 2001) (permitting employer to

23 seek contractual indemnity for FLSA liability flouts the purpose of the statute).

24  _____

25 [5] This conclusion is predicated on Plaintiffs' ability to cure the defects as to standing and jurisdiction.

Pursuant to this case law, Plaintiffs contend that if Chevron is deemed Plaintiffs' employer under the FLSA – as Plaintiffs allege – then Chevron's claim for indemnity against Cenergy is prohibited, which extinguishes or invalidates Cenergy's indemnity claim against Plaintiffs' corporate entities under the MSAs because it arises from Chevron's indemnity claim.[6]  Cenergy cites several district court decisions allowing indemnity claims to proceed at the pleading stage where the purported employers claimed the workers from whom they were seeking indemnity were independent contractors and not employees.[7]  *See, e.g., Jones v. Henry Indus., Inc.,* 2017 WL 513038 (E.D. Mo. Feb. 8, 2017); *Spellman v. Am. Eagle Express, Inc.*, 680 F. Supp. 2d 188, 189-92 (D.D.C. 2010).  Cenergy asserts these cases indicate indemnity is only prohibited by an employer against an employee; as Plaintiffs have not alleged an employee-employer relationship with Cenergy, the FLSA does not bar Cenergy's contractual indemnity claim, even if Plaintiffs were considered employees of Chevron.

The courts in *Jones* and *Spellman* were evaluating the viability of a purported employer's indemnity claim at the pleading stage.  The courts reasoned the indemnity claim was only invalid if the FLSA applied to the employment relationship, and the complaints for indemnity had adequately alleged the FLSA did *not* apply because the workers were independent contractors.  Because it was not yet determined whether the FLSA applied, the indemnity claims were allowed to proceed.  These cases do not, however, stand for the proposition that an employer is prohibited from seeking indemnity only from an employee.  The Second Circuit concluded in *Herman* there is no right to indemnity under the FLSA, regardless of the status of the one from whom indemnity is sought.  172 F. 3d at 143.  In *Jones* and *Spellman* it was the applicability of the FLSA on which the viability of the indemnity claims was

---

[6] (*See* Doc. 1-4, p. 4 ("Cenergy hereby advises CCLLC that, pursuant to a separate agreement, it may be obligated to defend and indemnify Chevron Corporation for any costs, expenses and other damages sustained as a result of the [FLSA] lawsuit.").

[7] In *Bogosian v. All Am. Concessions*, No. 06-cv-1633-RRM-RML, 2011 WL 4460352 (E.D.N.Y. Sept. 26, 2011), indemnity was permitted against an alleged joint employer pursuant to a contractual indemnity provision after settlement of the workers' FLSA claims.  In that case, however, there was no court determination whether the FLSA actually applied due to the settlement – thus, there was no FLSA application upon which to bar indemnity, and the matter was simply one of contract application in light of the settlement.

1  predicated, not the status of the person from whom the purported employer sought indemnity.

2  Considering *Jones*, *Spellman*, and *Herman* together, if the FLSA applies there is a colorable argument

3  here that Chevron may not shift any liability or costs arising from Plaintiffs' FLSA lawsuit to any other

4  entity or person, either by virtue of the FLSA itself or by separate contractual agreement.  *Gustafson*,

5  171 F. Supp. 2d at 328 ("Allowing indemnification [against a purported joint-employer] would permit

6  employers to contract away their obligations under the FLSA, a result that flouts the purpose of the

7  statute.").

8         If Chevron is deemed to be Plaintiffs' employer, Plaintiffs contend Chevron's claim for

9  indemnity is invalid under the FLSA, and Cenergy's claim for indemnity, stemming from Chevron's

10  allegedly impermissible indemnity demand, is extinguished and/or is itself invalid as flouting the

11  purpose of the FLSA.  *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)

12  ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the

13  purposes' of the statute and thwart the legislative policies it was designed to effectuate").  For the same

14  reasons that the purported employers' indemnity claims in *Jones* and *Spellman* could not be held invalid

15  at the pleading stage, Plaintiffs' request for a declaration regarding the enforceability of the MSAs

16  cannot be deemed invalid as Plaintiffs have sufficiently alleged the FLSA applies to their employment

17  relationship with Chevron.  This theory appears viable under the relevant case authority, and Plaintiffs'

18  request for declaratory relief is therefore cognizable at this stage.[8]

19  **D.     The Amended Complaint Must Address Procedural Issues**

20         Although Plaintiffs appear to state a theoretically viable theory for declaratory relief, the Court

21  has concerns about several procedural aspects of this case that must be addressed in connection with

22  any amended complaint.  First, the Court makes no determination as to the propriety of Plaintiffs

23  seeking declaratory relief under the DJA as a collective action under 29 U.S.C. § 216(b) – *i.e.*, whether

24

---

25  [8] Even assuming Chevron were determined to be Plaintiffs' employer and the FLSA applied, the Court takes no position on whether there are damages, costs, or expenses separate from any FLSA liability for which Cenergy could seek indemnity under the MSAs.

the FLSA is the appropriate procedural vehicle to pursue a representative action. As Plaintiffs' alleged employer (Chevron) is not a party to this case and Cenergy is not alleged to be Plaintiffs' employer, whether an FLSA collective action can proceed against Cenergy alone is questionable. Second, it is not clear to the Court whether Chevron must be joined to this litigation as a necessary party pursuant to Federal Rule of Civil Procedure 19. The practical effect of the declaration Plaintiffs seek is to invalidate any indemnity Chevron seeks against Cenergy stemming from the FLSA collective action pending in the Northern District of California. Finally, the Court is forced to consider whether this case should be related to the collective action pending in the Northern District, such that similar issues may be decided by the same judge.

**E.  Conclusion**

For the reasons discussed above, there is no federal-question jurisdiction over Plaintiffs' complaint and Plaintiffs lack standing to challenge the enforceability of the MSAs between Cenergy and Plaintiffs' corporate entities. Therefore, Cenergy's motion to dismiss under Rule 12(b)(1) is GRANTED. Because these deficiencies appear curable, however, Plaintiffs may file an amended complaint within 14 days from the date of this order. Any amended complaint must address the procedural issues outlined above. Plaintiffs' motion for a preliminary injunction is held in abeyance pending amendment of the complaint. *See, e.g., Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 842 (D. Alaska 2012) (district court may not grant preliminary injunction if it lacks subject matter jurisdiction over the claim before it).

///

///

///

///

///

///

## V. <u>CONCLUSION</u>

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.     Cenergy's Motion to Dismiss is GRANTED;

2.     Plaintiffs' complaint is dismissed with 14-days leave to amend; and

3.     Plaintiffs' Motion for a Preliminary Injunction is held in abeyance pending amendment
       of the complaint.

IT IS SO ORDERED.

Dated:   **June 15, 2017**                      **/s/ Lawrence J. O'Neill**
                                         UNITED STATES CHIEF DISTRICT JUDGE