1  Matthew C. Helland, CA SBN 250451
   helland@nka.com
2  Daniel S. Brome, CA SBN 278915
   dbrome@nka.com
3  NICHOLS KASTER, LLP
   235 Montgomery St., Suite 810
4  San Francisco, CA 94104
   Telephone: (415) 277-7235
5  Facsimile: (415) 277-7238

6

7  Attorneys for Plaintiffs

8              IN THE UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF CALIFORNIA
9

   Donnie Cummings and Charles Beaty, on behalf    | Case No. 1:17-cv-00484-LJO
10 of themselves and others similarly situated,    |
                                                    | **PLAINTIFFS' OPPOSITION TO**
11                            Plaintiffs,           | **DEFENDANT'S MOTION TO COMPEL**
                                                    | **ARBITRATION**
12       v.                                         |
                                                    | Date:         May 14, 2018
13 Cenergy International Services, LLC,             | Time:         8:30 a.m.
                                                    | Courtroom:    4
14                            Defendant.            |
15                                                  |
16                                                  | Complaint Filed: April 5, 2017
17
18
19
20
21
22
23
24
25
26
27
28

                                    -i-

1

## TABLE OF CONTENTS

2

INTRODUCTION ........................................................................................................... 1

3

FACTUAL AND PROCEDURAL HISTORY .............................................................. 1

4

ARGUMENT ................................................................................................................... 2

5

A.   Cenergy has waived any right to compel arbitration ............................................ 2

6

    1.   Cenergy had knowledge of the potential to compel arbitration .................... 2

7

    2.   Cenergy acted inconsistently with exercising the right to compel arbitration by seeking

8

        judicial adjudication of the merits of the case and denying that Plaintiffs were third-

9

        party beneficiaries of the contracts ................................................................ 3

10

      a.   Filing two motions to dismiss regarding core merits issues was inconsistent with

11

          compelling arbitration ........................................................................... 3

12

      b.   Cenergy's position on third-party beneficiary status is inconsistent with a right to

13

          arbitrate .................................................................................................. 5

14

    3.   Plaintiffs were prejudiced by Cenergy's tactical delay ................................. 7

15

    4.   Cenergy's request is inconsistent with the purpose of arbitration ................ 9

16

B.   Plaintiffs are not estopped from pursuing claims in court .................................... 9

17

C.   The arbitration provisions are unconscionable and unenforceable ...................... 11

18

    1.   Both contracts subject Plaintiffs to indemnification liability for arbitration of

19

        arbitrability ..................................................................................................... 12

20

    2.   The delegation of arbitrability is unconscionable under Texas law .............. 14

21

    3.   The delegation of arbitrability is unconscionable under California law ....... 15

22

    4.   The agreements are procedurally unconscionable ......................................... 18

23

CONCLUSION .............................................................................................................. 19

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Cases**

3  *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000) ............... 15, 18

4  *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643 (1986) .................................................... 6

5  *Besteman v. Pitcock*, 272 S.W.3d 777 (Tex. App. 2008)......................................................... 13, 14

6  *Clayborn v. Lithia Motors*, 2017 WL 6017009 (E.D. Cal. Dec. 5, 2017)..................................... 11

7  *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) ............................................................... 9, 10

8  *ConWest Resources, Inc. v. Playtime Novelties, Inc.*, 2007 WL 1288349 (N.D. Cal. May 1, 2007)

9  ................................................................................................................................................ 8

10  *Coronado v. D.N. W. Houston, Inc.*, 2015 WL 5781375 (S.D. Tex. Sept. 30, 2015)........ 14, 15, 18

11  *Cummings v. Cenergy Int'l Servs., LLC*, 271 F. Supp. 3d 1182 (E.D. Cal. 2017).......................... 1

12  *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846 (2001) ......................................... 19

13  *Gonsalves v. Infosys Techs., Ltd.*, 2010 WL 3118861 (N.D. Cal. Aug. 5, 2010) ............... 2, 3, 4, 8

14  *Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*, 282 F.Supp.2d 1131 (N.D. Cal.

15  2003) ...................................................................................................................................... 17

16  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) ........................................... 11, 13

17  *JSM Tuscany, LLC v. Superior Court*, 193 Cal.App.4th 1222 (2011)......................................... 10

18  *Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016) .................................................................. 2, 5, 7

19  *Martinez v. Welk Group, Inc.*, 2012 WL 112535 (S.D. Cal. Jan. 12, 2012) .......................... passim

20  *Maxim Crane Works, L.P. v. Tilbury Constructors*, 208 Cal.App.4th 286 (2012) ....................... 16

21  *McConnell v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 105 Cal. App. 3d 946 (1980) ........... 3

22  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. N.R. Hamm Quarry*, 2013 WL 12176841 (N.D.

23  Cal. Jan. 8, 2013) .................................................................................................................... 5

24  *MoistTech Corp. v. Sensortech Systems, Inc.*, 2015 WL 12778416 (C.D. Cal. Sept. 14, 2015) ... 10

25  *Plows v. Rockwell Collins, Inc.*, 812 F.Supp.2d 1063 (C.D. Cal. 2011)................................. 2, 3, 8

26  *Rent–A–Center, W., Inc. v. Jackson,* 561 U.S. 63 (2010) ..................................................... 13, 17

27  *Scherk v. Alberto–Culver Co.,* 417 U.S. 506 (1974).................................................................... 17

28

*Sherwood Mktg. Grp., LLC v. Intertek Testing Services, N.A., Inc.*, 2018 WL 672515 (S.D. Cal. Jan. 31, 2018) .................................................................................................................. 10

*Standard Pipe & Supply Co. v. Marvin*, 43 Cal. App. 2d 230 (1941) ......................................... 16

*Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653 (1998) .................................................. 10

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) .............................. 6

*Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754 (9th Cir. 1988) ........................... 2, 4, 5

*Vita Planning and Landscape Architecture, Inc. v. HKS Architects, Inc.*, 240 Cal.App.4th 763 (2015) .................................................................................................................................. 17

**Statutes**

9 U.S.C. § 2 ................................................................................................................................ 11

California Civil Code § 2782 .................................................................................................. 16, 17

California Code of Civil Procedure § 1281 .................................................................................. 11

California Code of Civil Procedure § 410.42 ............................................................................... 16

California Labor Code § 2802 ................................................................................................. 16, 17

California Labor Code § 2804 ................................................................................................. 16, 17

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1

### INTRODUCTION

2      Plaintiffs filed this case over a year ago. In the time this case has been pending, Cenergy

3 has consistently sought to have this Court rule on the core of the case, and never invoked a right

4 to compel arbitration. Cenergy has therefore waived its right to seek arbitration. Cenergy also

5 failed to show that Plaintiffs are equitably estopped from pursuing claims in Court, because

6 Plaintiffs seek to invalidate, not enforce, the terms of the contracts. Finally, the contracts at issue

7 are unconscionable, and this Court should not order arbitration under these unfair agreements.

8 Plaintiffs ask that this Court deny Cenergy's motion.

9

### FACTUAL AND PROCEDURAL HISTORY

10      Plaintiffs filed this case over a year ago, on April 5, 2017. Cenergy could have moved to

11 compel arbitration immediately, but it did not. Instead, Cenergy filed a motion to dismiss,

12 challenging the core of Plaintiffs' claims. (ECF No. 7.) The Court granted Cenergy's motion,

13 finding that Plaintiffs had not sufficiently alleged standing as third-party beneficiaries of the

14 contracts between their corporate entities and Cenergy, and had not demonstrated standing

15 through the FLSA. (ECF No. 15.) In that order, the Court also held Plaintiffs' motion for

16 preliminary injunction in abeyance. The Court granted Plaintiffs leave to amend, and Plaintiffs

17 supplemented their allegations regarding third-party beneficiary status. (ECF No. 16.) Even so,

18 Cenergy maintained its position that Plaintiffs were *not* third-party beneficiaries, filing a second

19 motion to dismiss. (ECF No. 17.)

20      In the order denying Cenergy's second motion to dismiss, the Court reached several

21 critical conclusions: First, it recognized Plaintiffs sufficiently alleged third-party beneficiary

22 status to confer standing. Second, the Court found that Cenergy has directly threatened Mr.

23 Cummings and Mr. Beaty with individual liability for indemnification, despite Cenergy's

24 insistence otherwise. Third, it held that the FLSA's prohibition on indemnification attaches when

25 an employee files a complaint, and prevents contractual shifting of defense fees on a plaintiff who

26 fails to prove employee status. *See Cummings v. Cenergy Int'l Servs., LLC*, 271 F. Supp. 3d 1182

27 (E.D. Cal. 2017). Plaintiffs recently filed a motion for summary judgment, asking this Court to

28

-1-

1    confirm that Cenergy cannot seek indemnification from Plaintiffs on the undisputed facts of this

2    case. (ECF No. 38.)

3                                              **ARGUMENT**

4           **A.  Cenergy has waived any right to compel arbitration**

5           "The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*,

6    829 F.3d 1118, 1124 (9th Cir. 2016). By actively litigating in this case for a year, Cenergy has

7    waived any right to arbitration. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759

8    (9th Cir. 1988). Cenergy made a "conscious decision to continue to seek judicial judgment on the

9    merits of [the] arbitrable claims" by twice moving to dismiss this case. *Id.*; *see also Gonsalves v.*

10   *Infosys Techs., Ltd.*, 2010 WL 3118861, at *3 (N.D. Cal. Aug. 5, 2010) (defendant waived right to

11   arbitrate by filing two motions to dismiss, resulting in "judicial litigation of the merits of

12   arbitrable issues").

13          A "party seeking to prove waiver of a right to arbitration must demonstrate: (1)

14   knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right;

15   and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Martin*,

16   829 F.3d at 1124 (citation omitted). All three requirements are met here.

17                  1.  Cenergy had knowledge of the potential to compel arbitration

18          Cenergy drafted the Master Services Agreements containing the arbitration provisions

19   that it now seeks to enforce, so "it is indisputable that they knew of their right to seek arbitration."

20   *See Martinez v. Welk Group, Inc.*, 2012 WL 112535, at *3 (S.D. Cal. Jan. 12, 2012) (citing *Plows*

21   *v. Rockwell Collins, Inc.*, 812 F.Supp.2d 1063, 1067 (C.D. Cal. 2011)).

22          Cenergy cannot claim that it did not realize the Master Services Agreements contained

23   arbitration provisions; Plaintiffs provided the entire text of one arbitration provision in their initial

24   Complaint and First Amended Complaint. (ECF No. 1, ¶ 33; ECF No. 16, ¶ 41.) Even though the

25   arbitration provisions were prominently featured in the complaints, Defendant opted not to move

26   to compel arbitration. Instead, Cenergy asserted that Plaintiffs could not even challenge the

27   enforceability of the MSAs because Plaintiffs were not parties to the MSAs and were not third-

28   party beneficiaries. (ECF No. 7 at 6–8; ECF No. 17 at 12–13.) Any argument that Cenergy did not

1    "know" of its right to arbitrate until the Court ruled on third-party beneficiary status confuses the

2    knowledge requirement with Cenergy's likelihood of success on the merits *See Plows*, 812 F.

3    Supp. 2d at 1067 ("the fact that *Concepcion* might have made it easier for Defendant to persuade

4    a court to compel arbitration does not mean that Defendant lacked knowledge of its potential right

5    to pursue arbitration prior to the decision in that case."). Instead, by moving to dismiss the case

6    instead of moving to compel arbitration, Cenergy took a calculated risk that it could dispose of

7    this litigation quickly and in this forum.

8                2. <u>Cenergy acted inconsistently with exercising the right to compel arbitration by</u>

9                   <u>seeking judicial adjudication of the merits of the case and denying that</u>

10                  <u>Plaintiffs were third-party beneficiaries of the contracts</u>

11        Cenergy has litigated this case for a year, twice seeking complete dismissal of the case on

12   the merits. Cenergy has consistently denied that Plaintiffs are third-party beneficiaries of the

13   agreements, but now asks that Plaintiffs be ordered to pursue their claims in arbitration as

14   provided in those contracts, *as third-party beneficiaries*. The Court should find that Cenergy

15   "substantially invoked the litigation machinery," and has therefore waived its right to arbitrate.

16   *Gonsalves*, at 2010 WL 3118861, at *3; *Martinez*, 2012 WL 112535, at *3

17                a. *Filing two motions to dismiss regarding core merits issues was*

18                   *inconsistent with compelling arbitration*

19        Cenergy's late-filed motion to compel arbitration "is like testing the water before taking

20   the swim. If it's not to your liking you go elsewhere." *McConnell v. Merrill Lynch, Pierce,*

21   *Fenner, & Smith, Inc.*, 105 Cal. App. 3d 946, 951 (1980). Cenergy litigated successive motions to

22   dismiss, and only moved to compel arbitration after receiving an unwelcome order on its second

23   motion.  Cenergy has waived any right it had to seek arbitration. *See Martinez*, 2012 WL 112535,

24   at *3 (finding waiver where defendants brought two motions to dismiss and only moved to

25   compel arbitration after "unwelcome" order).

26        Cenergy's motions to dismiss did not merely nibble around the edges of this litigation.

27   They attacked Plaintiffs' theories on the merits. For example, Cenergy's motions to dismiss raised

28   the following substantive issues:

- Whether Plaintiffs had standing to challenge the indemnification provisions as non-signatories to the contracts;
- Whether the FLSA provides a mechanism for Plaintiffs to obtain declaratory relief;
- Whether the FLSA confers standing on Plaintiffs as to Cenergy, when Plaintiffs did not allege Cenergy was an employer; and
- Whether resolution of Plaintiffs' status as employees versus independent contractors was a necessary element to preclude Cenergy's indemnification claims.

The Court's rulings on these motions have shaped this litigation. In ruling on Cenergy's first motion to dismiss, the Court rejected Plaintiffs' argument that the FLSA provided federal question jurisdiction over Cenergy's indemnity claims. ECF No. 15 at 10. That ruling is an example of Cenergy's "conscious decision to . . . seek judicial judgment on the merits of [the] arbitrable claims." *Van Ness Townhouses*, 862 F.2d at 759. A collective action for declaratory relief under the FLSA would have been a powerful tool for similarly situated workers facing indemnification threats from Cenergy, but Plaintiffs were forced to abandon that theory based on the Court's ruling on Cenergy's first motion to dismiss. Dismissal of a claim on the merits supports a finding of waiver. *Gonsalves*, at 2010 WL 3118861, at *4.

In contrast, the Court's order on Cenergy's second motion to dismiss was favorable to Plaintiffs and extremely unfavorable to Cenergy. In addition to addressing standing and third-party beneficiary status, the Court reached the most important merits issue for this indemnification action: whether an FLSA plaintiff who does not establish employee status can be held responsible for contractual indemnification. Noting a split of authority, the Court followed cases prohibiting indemnification in those circumstances. *Cummings*, 271 F. Supp. 3d at 1194. The purpose of this indemnification action is to obtain an order that Cenergy may never recover from Plaintiffs individually, regardless of the outcome of the underlying FLSA litigation or the indemnification actions against dissolved and insolvent corporate entities. Cenergy's decision to roll the dice with this Court on that important issue reflects "a 'conscious decision' to seek an

-4-

1  adjudication of the merits of otherwise arbitrable claims." *Merrill Lynch, Pierce, Fenner & Smith*

2  *Inc. v. N.R. Hamm Quarry*, 2013 WL 12176841, at *5 (N.D. Cal. Jan. 8, 2013) (citing *Van Ness*

3  *Townhouses*, 862 F.2d at 759). Having lost on this important question of law, Cenergy cannot

4  now seek a do-over in arbitration. *Martinez*, 2012 WL 112535, at *3.

5       "There is no concrete test to determine whether a party has engaged in acts that are

6  inconsistent with its right to arbitrate." *Martin*, 829 F.3d at 1125. In determining waiver, a court

7  cannot simply count the number of motions or litigation activities or measure the duration of the

8  case. Instead, a party acts inconsistent with the right to arbitrate when it "chooses to delay his

9  right to compel arbitration by actively litigating his case to take advantage of being in federal

10  court." *Id.* Thus, while "filing a motion to dismiss that does not address the merits of the case is

11  not sufficient to constitute an inconsistent act, seeking a decision on the merits of an issue may

12  satisfy this element." *Id.* Here, the Court should find that Cenergy's conscious decision to seek

13  complete dismissal on the merits is an act inconsistent with arbitration sufficient to result in

14  waiver.

15       b.  *Cenergy's position on third-party beneficiary status is inconsistent with a*

16          *right to arbitrate*

17       Cenergy has also acted inconsistently with its alleged right to arbitrate by maintaining

18  throughout this litigation that Plaintiffs <u>are not</u> third-party beneficiaries of the agreements at issue.

19  Arbitration is a creature of contract, and Plaintiffs can only be compelled to arbitrate if they are

20  subject to an arbitration agreement or are third-party beneficiaries of such an agreement. By

21  maintaining that Plaintiffs are not third-party beneficiaries, Cenergy has acted inconsistently with

22  its right to compel arbitration.

23       Cenergy's motion to compel arbitration depends on a finding of third-party beneficiary

24  status, and yet Cenergy is unwilling to concede this point in its motion. (Mot. Compel, ECF No.

25  36 at 11.) Indeed, Cenergy has consistently taken the position that Plaintiffs lack standing because

26  they are not parties to the agreements and are not third-party beneficiaries.[1] Cenergy's strategy is

27  _____

28  [1] Cenergy has represented to this Court that "the Contractor Entities, and not Plaintiffs in their
   individual capacities, are the only parties to the Agreements with CIS, and are the only parties

1  transparent—it hopes to compel arbitration based on third-party beneficiary status without

2  waiving any arguments in that regard, thereby reserving the right to argue in arbitration that

3  Plaintiffs are not third-party beneficiaries.

4      In its most recent filing, Cenergy maintained its position that Plaintiffs are not third-party

5  beneficiaries, asserting that Plaintiffs, as non-signatories, have no standing to bring this case.

6  (Reply re: Ex Parte Req., ECF No. 42 at 3.) But that position is incompatible with Cenergy's

7  request to compel arbitration under the agreements. If, as Cenergy contends, Plaintiffs are not

8  third-party beneficiaries, then they did not agree to arbitrate their claims, and this Court cannot

9  compel arbitration. *See AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643 (1986)

10  ("'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any

11  dispute which he has not agreed so to submit.'" (quoting *United Steelworkers v. Warrior & Gulf*

12  *Navigation Co.*, 363 U.S. 574, 582 (1960)).

13      Cenergy also asserts, without explanation or authority, that the Court need not decide the

14  third-party beneficiary issue at this time. (ECF No. 42 at 3.) That argument is untenable. Cenergy

15  has asked this Court to compel arbitration, and it is Cenergy's burden to establish that the parties

16  have agreed to arbitrate the issues in dispute. Cenergy cannot assert that Plaintiffs are bound by

17  the arbitration provisions while maintaining that Plaintiffs are not parties to (or third-party

18  beneficiaries of) the Master Services Agreements.[2] Cenergy's attempt to have its cake and eat it

19  too is reminiscent of its reservation of rights on individual indemnification. *See Cummings*, 271 F.

20  Supp. 3d at 1190. Cenergy acted inconsistently with its right to arbitrate by repeatedly denying

21  that Plaintiffs are third part beneficiaries, and by refusing to concede this point while at the same

22  time relying on it for this very motion.

23  _____

24  subject to arbitration proceedings concerning the Agreements." (Def. Opp. to Mot. Prel. Inj., ECF
    No. 10 at 10.) Cenergy even went further, asserting "the parties *did not* intend for Cummings to

25  be a beneficiary in his individual capacity." (Def. Mot. Dismiss First Am. Compl., ECF No. 17 at
    8, n. 1.)

26  [2] In contrast, Plaintiffs have not taken conflicting positions on this issue. Plaintiffs have always
    claimed to be third-party beneficiaries *and* that they cannot be compelled to arbitrate with

27  Cenergy. *See* Plf. Mot. Prel. Inj., ECF No. 6. Plaintiffs' point here is simple: Cenergy cannot
    compel arbitration based on Plaintiffs' third-party beneficiary status while reserving the right to

28  argue in arbitration that Plaintiffs have no standing to challenge the contracts.

1          3.  <u>Plaintiffs were prejudiced by Cenergy's tactical delay</u>

2          Plaintiffs have litigated this case for over a year. They have invested time and money into

3   this case, as well as in defending Cenergy's arbitrations against their corporate entities. More

4   significantly, the Court's rulings on Cenergy's two motions to dismiss have addressed core merits

5   issues, shaping how this litigation will proceed. Plaintiffs have been prejudiced by Cenergy's

6   approach, and compelling arbitration would be inappropriate.

7          As the Ninth Circuit recently explained, when a party has expended considerable time

8   and money due to the opposing party's failure to timely move for arbitration and is then deprived

9   of the benefits for which it has paid by a belated motion to compel, the party is indeed prejudiced.

10  *Martin*, 829 F.3d at 1127. *Martin* cited with approval cases finding prejudice where defendants

11  waited eleven, ten, eight, and eighteen months to move to compel, explaining that "the cost and

12  expense of litigating in district court are no longer simply 'self-inflicted' wounds on the part of

13  the plaintiffs [citation] because the defendants' actions have shown that they, too, have sought at

14  least for some period of time to attempt to resolve this issue in court rather than in arbitration." *Id.*

15         This case exactly fits the *Martin* standard. Plaintiffs have invested considerable time and

16  effort into litigating two motions to dismiss and a motion for preliminary injunction—procedural

17  steps which almost certainly would not have happened in arbitration. *See id.* at 1128. Also as in

18  *Martin*, the Plaintiffs here "would have to relitigate a key legal issue on which the district court

19  has ruled in their favor" if ordered to arbitration. *Id.* In fact, the Court here has ruled on multiple

20  merits issues, holding that Plaintiffs demonstrated standing to challenge contractual

21  indemnification provisions as third-party beneficiaries, and that the FLSA's prohibition on

22  indemnification attaches when an employee files a complaint and prevents contractual shifting of

23  defense costs on a plaintiff who fails to prove employee status. *Cummings*, 271 F. Supp. 3d 1182.

24  These significant rulings will shape this case going forward. The ruling on the first motion to

25  dismiss narrowed Plaintiffs' path, whereas the second bolstered Plaintiffs' claims. These rulings

26  would not be part of the case but for Cenergy's decision to litigate in court from the outset. This

27  litigation history constitutes prejudice and should prevent arbitration.

28

This is true even though this Court's rulings have been on motions to dismiss, as opposed to motions for summary judgment. Even though these rulings may not be "binding or a final finding on the merits, most of the same facts and legal issues are likely to be part of any future motions." *ConWest Resources, Inc. v. Playtime Novelties, Inc.*, 2007 WL 1288349, at *6 (N.D. Cal. May 1, 2007) (by previously moving for preliminary injunction, party seeking arbitration had "forced" the other party and the court "to expend considerable time and resources analyzing its claims, just as would be expended upon a summary judgment motion.") That is certainly the case here, where Plaintiffs have moved for summary judgment based key holdings in the Court's previous order. *See* ECF No. 39. Prejudice does not require ultimate resolution; the fact that this Court has ruled on core issues is sufficient.

Multiple courts have recognized that the requirements of litigation often mean a delayed motion to compel is inherently prejudicial to plaintiffs. *See, e.g., Gonsalves*, 2010 WL 3118861, at *4 ("No further showing of prejudice is necessary" where defendant "engaged in 'judicial litigation of the merits of arbitrable issues.'"). Much like in *Gonsalves*, the Plaintiffs here have been partially successful in the face of two motions to dismiss. In *Gonsalves*, some—but not all— of the plaintiffs' claims were dismissed with prejudice, and the court recognized that the belated motion to compel arbitration would allow the defendant "to seek a redetermination from an arbitrator of issues on which [defendant] failed to prevail this court," in effect allowing the defendant "to use a motion to compel arbitration as a means of 'forum shopping.'" *Id.* at n. 3. (citations omitted). Here, Cenergy obtained dismissal of Plaintiffs' FLSA claims for declaratory relief on a collective basis, but then lost on the core issue of FLSA indemnification. The Court should not allow Cenergy to use the judicial forum to secure dismissal of one of Plaintiffs' theories, but then shift to arbitration for redetermination of issues it lost.[3] Plaintiffs have been

---

[3] Similarly, as the court in *Plows* explained, "the fact that Defendant waited more than a year to request arbitration means that [plaintiff] has racked up thirteen months of legal fees defending a case in the court system. [Plaintiff] presumably also has made different choices concerning the litigation strategy of the case than he would have made if he had known that the case was going to proceed in arbitration. The prejudice prong of the waiver test is established." *Plows*, 812 F. Supp. 2d at 1068; *accord Martinez*, 2012 WL 112535, at *3 (plaintiff "has strategized and made choices based on proceeding with this case as a class action in federal court.")

1    prejudiced by Cenergy's decision to invoke the litigation machinery, and the Court should deny

2    the motion to compel arbitration.

3            4.   Cenergy's request is inconsistent with the purpose of arbitration

4            While not a formal requirement in evaluating waiver, it is significant that Cenergy's

5    motion to compel is inconsistent with the goal of quick and efficient resolution of disputes. "The

6    purpose of the FAA, and arbitration in general, is to promote quick, informal, and streamlined

7    resolution of issues between parties. It is not to be used as a back-up plan for litigation strategies.

8    Compelling arbitration at this late stage would seem to defeat its purpose[.]" *Martinez*, 2012 WL

9    112535, at *4 (internal citation omitted). These points are magnified in this case, where Cenergy

10   seeks to compel Plaintiffs—who both reside in California—to arbitrate in Texas, under the

11   AAA's Construction Industry Rules, which would require a $7,000 initial filing fee and additional

12   administration costs.

13           Cenergy drafted contracts that contained arbitration provisions. When Cenergy was sued

14   by workers who provided services under those contracts, it opted not to seek to compel

15   arbitration, but instead to litigate the merits of Plaintiffs' claims. Cenergy moved to dismiss not

16   once, but twice, both times arguing that Plaintiffs did not have standing to challenge the contracts.

17   Cenergy did not merely contest jurisdiction, its motions went to the heart of the issues in this case.

18   And its motions were fundamentally at odds with its current request; rather than acknowledging

19   that Plaintiffs were third-party beneficiaries (and therefore arguably subject to arbitration),

20   Cenergy denied at every turn that Plaintiffs were beneficiaries. As a result of Cenergy's actions,

21   Plaintiffs have litigated this case in court for over a year. The Court should conclude that Cenergy

22   has waived any right to compel arbitration, and deny Cenergy's motion in its entirety.

23       **B.  Plaintiffs are not estopped from pursuing claims in court**

24           Cenergy argues that Plaintiffs are estopped from proceeding in Court because they

25   request declaratory relief under contracts containing an arbitration provision. But Cenergy is

26   wrong. "Equitable estoppel 'precludes a party from **claiming the benefits of a contract** while

27   simultaneously attempting to avoid the burdens that contract imposes.'" *Comer v. Micor, Inc.*,

28   436 F.3d 1098, 1101 (9th Cir. 2006) (emphasis added). Plaintiffs did not bring this action to

1   "claim the benefits" of the contracts; they brought this action seeking a declaration that the

2   indemnification provisions are **unenforceable**. This is not the type of situation where courts have

3   found equitable estoppel, and the Court should reject Cenergy's unpersuasive arguments.

4       The cases Cenergy cites illustrate why equitable estoppel does not apply here. The first

5   case, *Sherwood Mktg. Grp.*, concerned a plaintiff suing a company that had contracted to test rice

6   cookers after an undiscovered defect led to a product recall. *Sherwood Mktg. Grp., LLC v.*

7   *Intertek Testing Services, N.A., Inc.*, 2018 WL 672515, at **1–3 (S.D. Cal. Jan. 31, 2018). There,

8   the plaintiff's "entire action appear[ed] to arise from [defendant's] *performance of its duties under*

9   *the Certification Agreement*." *Id.* at *6 (emphasis added). In other words, the plaintiff's claims

10  flowed from the fact that the defendant did not live up to its obligations under the agreement.

11  Likewise, in *JSM Tuscany*, the California Court of Appeal recognized that when a non-signatory

12  "*is suing on a contract*—on the basis that, even though the plaintiff was not a party to the

13  contract, the plaintiff is nonetheless entitled *to recover for its breach*, the plaintiff should be

14  equitably estopped from repudiating the contract's arbitration clause." *JSM Tuscany, LLC v.*

15  *Superior Court*, 193 Cal.App.4th 1222, 1239–40 (2011) (emphasis added). Finally, the plaintiff in

16  *MoistTech* had "taken advantage of several terms contained in the Agreement, and has now *sued*

17  *to enforce those rights.*" *MoistTech Corp. v. Sensortech Systems, Inc.*, 2015 WL 12778416, at *6

18  (C.D. Cal. Sept. 14, 2015) (emphasis added).

19      In all these cases, equitable estoppel was held to bar suits to *enforce* the contract, not suits

20  aimed at invalidating the contract. As the Ninth Circuit explained, arbitration cannot be compelled

21  against a party who "did not seek to enforce the terms" of the agreement. *Comer*, 436 F.3d at

22  1102. This suit, which claims the indemnification provisions are invalid, should not be evaluated

23  like a suit that "claim[s] a contract has been violated." *Textron Lycoming Reciprocating Engine*

24  *Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523

25  U.S. 653, 657–58 (1998) (under section 301 of the Labor Management Relations Act,

26  distinguishing "[s]uits for violation of contracts" from "suits that claim a contract is invalid").

27      Nor do Plaintiffs' suits against Chevron support equitable estoppel, since those claims are

28  grounded in federal and state employment law, not based in the agreements. *Comer*, 436 F.3d at

1102 (plaintiff's suit was based "entirely on ERISA, and not on the investment management agreements."). Here, Plaintiffs do not "seek to enforce" the agreements either as to Chevron or Cenergy, and Cenergy cannot show that Plaintiffs' suit to invalidate the indemnity agreements is actually a suit to enforce those agreements. Equitable estoppel does not apply.

### C.  The arbitration provisions are unconscionable and unenforceable

The Court should also deny Cenergy's motion to compel because the arbitration clauses and the clauses delegating arbitrability decisions to the arbitrator in both contracts are unconscionable and unenforceable under state and federal laws. The Federal Arbitration Act does not treat arbitration agreement preferentially but instead places arbitration agreements on the same footing as any other contract. Arbitration agreements are thus subject to all challenges "as exist at law or in equity for the revocation of any contract" including fraud, duress, and unconscionability. 9 U.S.C. § 2; Cal. Code Civ. Proc. § 1281. District courts apply "ordinary state-law principles that govern the formation of contracts" to evaluate the validity of arbitration agreements. *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir. 2003). The contracts here delegate decisions of arbitrability to an arbitrator.[4] Therefore, this Court must determine whether the delegation itself is unconscionable. *Clayborn v. Lithia Motors*, 2017 WL 6017009, at *3 (E.D. Cal. Dec. 5, 2017) (citations omitted).

Here, the delegation of arbitrability to an arbitrator is unconscionable and unenforceable under both contracts because it would impose unreasonable costs on Plaintiffs, permit fee shifting that it incompatible with FLSA rights, and impose illegal indemnification requirements. Under both Texas and California state contract laws,[5] therefore, the delegation of arbitration in each contract is unconscionable.

---

[4] Both contracts provide: "all claims, disputes or controversies arising out of, in connection with or in relation to this Agreement. . . including any and all issues of arbitration of such claim. . . shall be subject to the following dispute resolution procedure. . . . In the event that mediation fails to settle the Dispute, then . . . the Dispute shall be submitted to mandatory and binding arbitration." (ECF No. 36 at 31, 47.)

[5] The two contracts contain identical arbitration and indemnification clauses, but different choice of law provisions. The Drilling Consultants contract selects Texas law; the Cummings Consulting contract selects California law. While both contracts first look to maritime law, neither Mr. Beaty nor Mr. Cummings performed maritime work while working for Cenergy. Since only Mr. Beaty

1        1.  Both contracts subject Plaintiffs to indemnification liability for arbitration of

2            arbitrability

3        While the Court must focus on the delegation clause for this motion, that analysis

4  necessarily includes other contract terms that would control any arbitration, even on the

5  preliminary questions of arbitrability. Specifically, the indemnification, fee-shifting, and venue

6  selection provisions of the contracts are inseparable for any unconscionability analysis because

7  those provisions impose binding restraints on Plaintiffs' pursuit of any arbitration, including

8  arbitration of arbitrability. In other words, the impermissible terms in the agreements preclude this

9  Court from even sending questions concerning arbitrability to arbitration.

10        The "Indemnity" clause of the contracts ostensibly require Plaintiffs, through their

11  corporate entities, to "defend, protect indemnify and hold harmless" Cenergy "from and against

12  any loss, cost, claim, obligation to indemnify another, suit, judgment, award or damage (including

13  reasonable attorney's fees and costs) "arising out of or relating to the [Agreement] or the

14  performance of the Services under this Agreement." (ECF No. 36 at 30.) Cenergy asserts that

15  Plaintiffs' declaratory relief claim in this case must be arbitrated because it is a claim "aris[ing]

16  out of and [] connected and related to the Agreements." (ECF No. 36 at 13.) It necessarily follows

17  that the question of arbitrability of such a claim also "arise[s] out of and [is] connected and related

18  to the Agreements," and is therefore encompassed by the indemnification provision. *Id.* Any

19  arbitration—on threshold issues or the merits—subjects Plaintiffs to further indemnification risk.

20        Cenergy has already made clear its position that Plaintiffs' claims fall under the

21  indemnification clause, because it has "previously demanded" Plaintiffs' corporate entities

22  "indemnify CIS for any costs of defending against Plaintiffs' claim for unpaid wages." (ECF No.

23  27 at 6.) The law of this case also shows that Cenergy would pursue indemnification against

24  Plaintiffs from any arbitration of threshold issues. The Court recognized that Cenergy has

25  attempted to preserve the ability to pursue indemnification from Plaintiffs as individuals:

26  "Plaintiffs indicate they offered to dismiss this action in exchange for Cenergy's agreement not to

27

28  and Mr. Cummings ever performed any work under the guise of their respective entities'
    contracts, maritime law does not apply.

1  pursue indemnification against them personally, but this was refused by Cenergy." (ECF No. 26

2  at 10). Further, "Cenergy has expressly stated it *will* initiate suit against Plaintiffs in their

3  individual capacities if there are any indications the corporations have dissolved or otherwise did

4  not maintain proper corporate formalities." (*Id.*).

5      While Plaintiffs' claims in this case challenge the indemnification provisions broadly,

6  Cenergy's current motion must be denied because the indemnification clause extends to the

7  contracts' delegation of arbitrability. Including the indemnification clause in analysis of the

8  delegation of arbitrability does not render Plaintiffs' challenge a broader challenge to the contract

9  as a whole. Rather, the delegation clause itself is subject to traditional state-law contract

10  challenges; because the indemnification clause would apply to any proceedings based on the

11  delegation clause, it is properly included in this Court's analysis. *See Rent–A–Center, W., Inc. v.*

12  *Jackson,* 561 U.S. 63, 68-70 (2010).

13      Under both Texas and California law, the context at the time the agreements were made

14  shows unconscionability. *See Ingle*, 328 F.3d at 1171 (court must examine "the manner in which

15  the contract was negotiated and the circumstances of the parties at that time."); *Besteman v.*

16  *Pitcock*, 272 S.W.3d 777, 789 (Tex. App. 2008) (unconscionability analysis considers the parties'

17  general commercial background and the commercial needs of the particular case) (citations

18  omitted). The indemnification provisions, which are incorporated into the delegation provisions,

19  show why the delegation of arbitrability is unconscionable in this case.

20      Any order compelling this case (even the threshold question of arbitrability) to an

21  arbitrator will—by the terms of the contract—require Plaintiffs to pay the entirety of the

22  arbitration filing fee, arbitration costs including the arbitrator's daily fees, *and Cenergy's*

23  *attorneys' fees and costs*. The indemnification clause makes clear that any loss suffered by

24  Cenergy—including the costs of arbitration and the cost of defending in arbitration—will be

25  passed back to Plaintiffs (through their corporate entities). As a result, just to get in the door at

26  arbitration, Plaintiffs will need to pay substantially more than they would ever have to pay in

27  court, and could be ordered to pay costs and fees that undermine substantive statutory rights. The

28  possibility that an arbitrator will strike or disregard the indemnification clause cannot justify an

-13-

1    order compelling arbitration: part of the unconscionable wrong (Plaintiffs paying all filing costs

2    and fees) will transpire before any arbitrator can so rule. These costs are unconscionable as a

3    matter of both Texas and California law. This Court should therefore deny Defendant's motion to

4    compel arbitration because the requirement to arbitrate arbitrability is unconscionable, as is the

5    contract as a whole.

6                    2.   The delegation of arbitrability is unconscionable under Texas law

7            In Texas, contracts are unconscionable where "there is a gross disparity in the values

8    exchanged" and where, "given the parties' general commercial background and the commercial

9    needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable."

10   *Besteman,* 272 S.W.3d at 789 (citations omitted).

11           Contractual fee shifting provisions in conflict with statutory rights, like those here, can

12   render a contract unconscionable and unenforceable. *Coronado v. D.N. W. Houston, Inc.*, 2015

13   WL 5781375, at *9 (S.D. Tex. Sept. 30, 2015); *In Matter of the Marriage of Ard*, 2016 WL

14   3901902, at *4 (Tex. App. July 14, 2016) (*review denied* Jan. 20, 2017) (attorneys' fees provision

15   that required husband to pay attorney's fees directly to wife if wife chose to enforce the

16   agreement she drafted "reflected the extremely one-sided nature" of the agreement and found the

17   agreement was unconscionable).

18           In *Coronado*, the defendant employer required exotic dancers to "indemnify, hold

19   harmless and pay for [the defendant club's] defense from and against any and all claims, losses or

20   liability, including attorneys' fees, arising from or related to the dancer's relationship with the

21   defendant clubs." 2015 WL 5781375, at *9. The court held that such a provision "allows the

22   defendant clubs to recover attorneys' fees whether they win or lose in arbitration" and violates the

23   FLSA. *Id.* at 10. The court recognized that the FLSA provides for one-way fee shifting, and that

24   employers' attempts to contract around that are routinely found unenforceable. *Id.* Accordingly,

25   the court deemed the clause unconscionable and severed it from the contract.[6] *Id.*

26   _____

27   [6] Severing the offending provisions—fee shifting and indemnification—while compelling
     arbitration is not a realistic option here, because such a procedure would create an end run around

28   the ultimate merits decision about whether the indemnification provision is unenforceable as a
     matter of law.

The contracts at issue here suffer from the same defect as in *Coronado*. Not only does the arbitration clause here allow an arbitrator to award attorneys' fees to the prevailing party, the indemnification provision would allow Cenergy "to recoup attorneys' fees from the plaintiffs even if they prevail on their FLSA claims." *Id.* Therefore, this Court cannot compel arbitration—of the merits or the threshold arbitrability question—under the contract as written.

Where, as here, the delegation of arbitrability is so one-sided as to stick one party with all costs and fees associated with arbitrating arbitrability just to get in the door to argue unconscionability of the contract as a whole, the delegation of arbitrability is unconscionable and unenforceable. Following the contractual delegation procedure would not merely transfer Plaintiffs' claims to a different forum, but substantially limit Plaintiffs' rights, and show why Cenergy's motion should be denied.

3.   The delegation of arbitrability is unconscionable under California law

The delegation of arbitrability in this contract is unenforceable under California law for at least three reasons. First, the arbitration provision is inconsistent with the employment protections required by *Armendariz*, and this Court should not enforce it. Second, California, like Texas, law prohibits indemnification in this context and incorporation of the illegal indemnification provision in the arbitration clause renders it void. Finally, the venue provisions are illegal under California law. For all these reasons, the Court should not compel arbitration.

As explained above, the arbitration clauses, and therefore the delegation clauses, would impose unreasonable costs on Plaintiffs if they were forced to file in arbitration. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 107–113 (2000). Plaintiffs would have to pay a $7,000 initial filing fee, and ongoing arbitration costs—which simply do not apply to litigation in this Court. Additionally, if Plaintiffs were unsuccessful, they would be subject to fee shifting under the arbitration, which conflicts with their statutory rights under the FLSA. *See id.* at 104 ("that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees appears to be undisputed.") Most significantly, the indemnification provision at the heart of this case appears to mean that *even if they are successful* Plaintiffs would have to pay all of Cenergy's costs associated with arbitration. (ECF No. 36 at

-15-

1  30.) Granting Cenergy's motion to compel would limit Plaintiffs' substantive rights, and impose

2  illegal burdens on Plaintiffs. The arbitration clause is unconscionable, and the Court must deny

3  Cenergy's motion.

4       The agreements to delegate arbitration violate explicit California public policy as set

5  forth in three laws: California Code of Civil Procedure § 410.42, California Civil Code § 2782,

6  and California Labor Code §§ 2802 and 2804.[7]

7       California Code of Civil Procedure § 410.42, effective July 2012, provides that any

8  provision in a "contract between the contractor and a subcontractor with principal offices in this

9  state, for the construction of a public or private work of improvement in this state, shall be void

10  and unenforceable" that attempts "to require any dispute between the parties to be litigated,

11  arbitrated, or otherwise determined outside this state." This code section is applicable to the

12  contracts at issue here[8] and directly conflicts with Cenergy's attempt to require arbitration in

13  Houston, Texas, as required in the contract. (ECF No. 36 at 31.) Under California law, the

14  contract provisions requiring Plaintiffs, who maintained principal offices for their subcontracting

15  LLCs in California, to arbitrate in Houston are void and unenforceable.

16       The contract provisions therefore violate California public policy. Section 410.42 was

17  enacted to prohibit out-of-state contractors from taking advantage of California subcontractors by

18  forcing subcontractors to resolve disputes in the contractor's home state, thereby depriving

19

20  [7] While Plaintiff Beaty's contract provides that Texas law applies, Plaintiff Beaty lives in
21  California and incorporated Drilling Consultants (his company and the party to the underlying
   agreement) in California, brought this action in California, and worked for Chevron through
22  Cenergy in California (although outside the statutory period for his underlying wage claims).
   Therefore, this Court may look to California law as to Plaintiff Beaty as well as Plaintiff
23  Cummings, since a "choice of law provision, although generally enforceable, may be
   unenforceable if it violates a strong public policy in California, the forum state." *Maxim Crane*
24  *Works, L.P. v. Tilbury Constructors*, 208 Cal.App.4th 286, 291 (2012).
25  [8] The well site management services plaintiffs performed qualify as "construction" under Section
   8050 of the Civil Code, as oil wells are "works of improvement." *See Standard Pipe & Supply*
26  *Co. v. Marvin*, 43 Cal. App. 2d 230, 231 (1941) (rejecting defendants' argument that a partially-
   drilled oil well was not a "work of improvement" and therefore eligible for mechanic's lien).
27  Plaintiffs would, by virtue of Section 8400 of the California Civil Code, be eligible to pursue a
   mechanics lien for their well site management work for Chevron either as "laborers" (section (e))
28  or "subcontractors" (section (b)).

-16-

1  California subcontractors of the protection of California courts and law and forcing

2  subcontractors to forgo dispute resolution for economic reasons even when the subcontractors

3  have a meritorious case. *See Vita Planning and Landscape Architecture, Inc. v. HKS Architects,*

4  *Inc.*, 240 Cal.App.4th 763, 775 (2015) (finding section 410.42 barred enforcement of forum

5  selection clause in contract between Texas contractor and California subcontractor requiring

6  parties to first mediate and then litigate all disputes in Texas) (quoting legislative history of

7  410.42). Agreements to arbitrate are "in effect, a specialized kind of forum-selection

8  clause." *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 (1974). And, under *Rent-A-Center*,

9  delegation of arbitrability clauses are themselves arbitration agreements. 561 U.S. 63, 68-70. This

10  Court may not enforce Cenergy's contractual forum selection clause that conflicts with California

11  public policy and seeks to order arbitration outside of this forum. *Homestake Lead Co. of*

12  *Missouri v. Doe Run Resources Corp.*, 282 F.Supp.2d 1131, 1143–44 (N.D. Cal. 2003) ("the court

13  is precluded from ordering arbitration in the contractually-designated forum" and may only order

14  "arbitration within the district in which the suit was filed.").

15      The delegation clause also violates California law through its incorporation of the illegal

16  indemnification provisions. California Civil Code § 2782 provides that clauses in "any

17  construction contract that purport to indemnify the promisee against liability for . . . any other loss

18  . . . arising from the sole negligence or willful misconduct of the promisee or the promisee's

19  agents . . . are against public policy and are void and unenforceable." Similarly, provisions "that

20  purport to insure or indemnify, including the cost to defend, a general contractor, construction

21  manager, or other subcontractor, by a subcontractor against liability . . . are void and

22  unenforceable" where they include indemnification for others' negligence. Cal. Civ. Code §

23  2782.05. As described above, the Master Services Agreement here constitutes a construction

24  contract, and it attempts to require indemnification even including for Cenergy's negligence.

25  (ECF No. 36 at 30.) Relatedly, the California Labor Code requires employers to indemnify

26  employees for all business expenses (§ 2802) and declares that any contract that purports to waive

27  that requirement "is null and void." Cal. Lab. Code § 2804. Here, Plaintiff Cummings has been

28  found in arbitration to be an employee, and therefore entitled to the protections of the labor code.

-17-

1   The indemnification provision that is incorporated into the delegation clause is therefore "null and

2   void." *Id.*

3          The contracts, written by Cenergy and presented to Plaintiffs with no opportunity to

4   negotiate, violate these provisions, and are void and unenforceable. Cenergy has already

5   attempted to use this illegal indemnification clause to its advantage by filing demands for

6   arbitration against Cummings Consulting and Drilling Consultants. (*See* ECF Nos. 38-30, 38-39.)

7   Based on the indemnification provision, Cenergy is demanding that Cummings Consulting (a

8   corporation that has been dissolved for over a year and contains virtually no assets) "tender to

9   Cenergy" the amount of the arbitration award Mr. Cummings won in his arbitration against

10  Chevron in December 2017, as well as legal fees resulting from the arbitration. (ECF No. 38-30.)

11  Cenergy asserts that Mr. Cummings must indemnify Cenergy for over $500,000. (*Id.*)

12         Because the clause requiring arbitration of all disputes including of questions of

13  arbitrability violates California public policy, it is substantively unconscionable, and this Court

14  should deny Cenergy's motion. *Armendariz*, 24 Cal.4th at 124–25, n. 13

15                         4.   The agreements are procedurally unconscionable

16         The indemnification provisions of the contracts inevitably lead to unjust and illegal

17  results, and this Court should deny Defendant's motion. Because the substantive impact of these

18  provisions is so oppressive, the Court need not dwell on procedural aspects of the contracts.

19  *Armendariz*, 24 Cal.4th at 114 (explaining "sliding scale" of substantive and procedural

20  unconscionability); *see also Coronado*, 2015 WL 5781375, at *10 (finding contracts

21  unenforceable without analysis of procedural unconscionability where contracts allow defendants

22  "to recoup attorneys' fees from the plaintiffs even if they prevail on their FLSA claims").

23         Even so, the Court can find that these contracts are procedurally unconscionable because

24  the arbitration provisions and delegation clauses were contained in contracts of adhesion that

25  Cenergy prepared and required Plaintiffs to sign in order to get paid. In early 2014, Cenergy

26  required Plaintiff Cummings to create a corporate entity to receive payments, and execute a new

27  contract on behalf of that corporate entity. Cenergy told Mr. Cummings that without the corporate

28  entity, "we are unable to issue payment to you." (Brome Decl. Exh. 1.) Cenergy followed up with

1   multiple emails indicating that the new corporate information and new contract signature were

2   required for continued payment. (Brome Decl. Exh. 2 (requesting corporate information "as soon

3   as possible as to not hold up your new contract"); Exh. 3 (requesting signature on revised contract

4   "as soon as possible so we can complete the process.").) The message was clear: if Plaintiff

5   Cummings wanted to continue getting paid for his work, his only option was to sign the contract

6   as provided by Cenergy. This is sufficient to show procedural unconscionability. *Flores v.*

7   *Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 853–54 (2001) ("A finding of a contract of

8   adhesion is essentially a finding of procedural unconscionability.")

9                                        **CONCLUSION**

10          For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's

11  motion in full.

12

13  Dated:   April 30, 2018                    **NICHOLS KASTER, LLP**

14                                             By:    s/Daniel S. Brome
15                                                    Daniel S. Brome

16                                             Attorneys for Plaintiffs and Others Similarly
17                                             Situated

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION